BOARD OF EDUCATION OF THE TOWN OF MANCHESTER *v.*
CONNECTICUT STATE BOARD OF EDUCATION ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued December 12, 1979—decision released February 26, 1980

*Thomas J. Prior,* for the appellant (plaintiff).

*Robert W. Garvey,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Bernard F. McGovern,* assistant attorney general, for the appellee (named defendant).

*Hollace P. Brooks,* for the appellees (defendants John Lahda et al.).

COTTER, C. J. As a matter of first impression, we are required to interpret several provisions of the General Statutes which concern special education. See General Statutes §§ 10-76a—10-76q. This case primarily involves the special education needs of one of the defendants, Charles Lahda. The evidence presented before the hearing board of the state board of education revealed that Charles is a multi-handicapped child who was identified as needing special education because he is retarded and has speech and gross motor coordination problems. Prior to September, 1976, he had been enrolled in a special education program at Keeney School,

a public school operated by the plaintiff Manchester board of education. In 1974, he began to exhibit problematic behavior in the classroom. Charles' behavior problems became more severe during the 1975-76 school year and his behavior constituted a danger to the safety of the other children in the class as well as a disruptive element in the classroom and playground.

Charles' parents became increasingly concerned that the special education program in which he was enrolled was inadequate to meet his needs and that he was retrogressing. In February, 1976, a planning and placement team within the school, his parents and his teacher felt that the hiring of a teacher's aide for Charles might ameliorate his problems. Before an aide could be hired, however, the approval of a system-wide central planning and placement team was required and when a meeting with this group was delayed,[1] Charles' parents, after contacting the Manchester board of education, requested a state mediator, pursuant to General Statutes § 10-76h (b) (1). The mediation session in June, 1976, failed to reach a solution and, pursuant to General Statutes §§ 10-76h (a) (2) and 10-76h (b) (2), a review by the state board of education was requested on July 14, 1976.

[1] The state hearing board found, inter alia, that:

"6. The chairperson of the central planning and placement team, Mr. Allan Chesterton, refused to place the request for additional personnel on the central PPT agenda until a written statement supporting this request was submitted to the central PPT by the Lahda's privately retained psychiatrists.

7. Due to procedural delays and the reticence of the psychiatrist to involve himself in Charles' educational program, the request for additional classroom personnel was not placed on the central PPT agenda during the 1975-76 school year."

When mediation was begun, the request for an aide was held in abeyance pending the outcome of mediation.

The hearing by the state board of education, originally scheduled for August 31, 1976, was continued until October 26, 1976, at the request of the Manchester board of education. Since the school year was beginning and because Charles' parents believed that the special education program provided by the Manchester board of education was inappropriate for his needs, in September of 1976 they enrolled him in the Intensive Education Center, a private nonsectarian institution in West Hartford, which Charles' parents had investigated in the spring of 1976.[2]

Following the October 26, 1976 hearing, the hearing board of the state board of education, in its decision dated December 21, 1976, concluded that "the educational program prescribed and implemented for Charles, in spite of the intense efforts on the part of the Manchester educational staff, did not adequately meet his needs" and that there was "little reason to believe that significant programmatic change would have taken place in the 1976-1977 school year." It found that the staff of the Intensive Educational Center had not observed any inappropriate classroom behavior by Charles and that the Center's ability to deal effectively with his behavior allowed for a better prognosis for his academic growth. The Manchester board of education was ordered to pay all reasonable educational

---

[2] At the hearing before the state hearing board, Sister Helen Dowd, the director of the Intensive Education Center, testified that she had observed Charles Lahda at the Keeney School in May, 1976, and noticed a severe behavioral problem. She further stated that Charles needed a structured program; that he responded to the Center's individualized program and structure almost immediately; and that he was in classes varying in size from one-to-one to eight-to-two.

costs including transportation for Charles Lahda to the Intensive Educational Center for the academic year 1976-77.

The Manchester board of education appealed the state board of education's decision to the Court of Common Pleas and sought review of that decision as provided for in the Uniform Administrative Procedure Act, General Statutes § 4-183. That court concluded that the state board had acted within the authority conferred on it by statute and dismissed the appeal, and the plaintiff appealed from the judgment rendered in favor of the defendants.

The plaintiff's sole argument on this appeal is that the lower court erred because the statutory provisions relating to special education in the circumstances of this case give no authority to the state board of education to order the Manchester board of education to assume the costs of Charles Lahda's special education program at a private facility. The statutory authority granted the hearing board is found in General Statutes § 10-76h (e), which reads in relevant part: "The hearing board shall have the authority to confirm, modify, or reject any diagnosis, evaluation, educational program prescribed, or exclusion or exemption from school privileges and prescribe alternate special educational programs for the child, and shall inform the parent or guardian or the commissioner of children and youth services, as the case may be, and the board of education of the school district of its decision . . . ." The plaintiff does not dispute the fact that the state hearing panel rejected the plaintiff's program, but nonetheless it contends that if a local program is rejected, § 10-76h (e) mandates that the hearing panel prescribe an alternate special education program for the local board to implement.

The plaintiff argues that General Statutes §§ 10-76d (a) and 10-76d (b) (1) and (2) place the primary burden of prescribing and providing suitable special education programs for eligible children on local boards of education. Further it notes that General Statutes § 10-76d (d) permits local school boards which cannot locally meet the special education needs of a child to contract with public or private schools outside the local system. The plaintiff claims that it should have been given the opportunity to consider outside placement as authorized by § 10-76d (d) since such placement existed as a possibility if the hiring of an aide was deemed unsuccessful. The plaintiff also contends that the actions of Charles' parents were unilateral in placing Charles in a private facility and such actions cannot obligate a local board to reimburse the parents.

Consequently, the thrust of the plaintiff's argument is twofold: (1) that the hearing panel's order, pursuant to § 10-76h (e), is without statutory authority because such an order conflicts with the statutorily mandated functions of the local board of education and § 10-76h (e) should be read in light of § 10-76d's provisions; (2) that even if the order were to be considered a prescription of an alternate program within the purview of § 10-76h (e), the action of Charles' parents in placing him in a private facility was unilateral and precluded reimbursement.

## I

Although it is well-established that the legislature acts in view of existing relevant statutes and with the intention of creating one consistent body of law; *State* v. *Murtha,* 179 Conn. 463, 466, 427 A.2d

807; *Doe* v. *Institute of Living,* 175 Conn. 49, 58, 392 A.2d 491; *State* v. *White,* 169 Conn. 223, 234, 363 A.2d 143; *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66; the plaintiff has not ventured widely enough to view the consistency provided for by existing relevant statutes in the circumstances of this case. Although the primary responsibility for providing special education for eligible students rests with local boards of education, General Statutes § 10-4 places the overall responsibility for educating Connecticut children, including those in need of special education, with the state board of education. General Statutes § 10-4a mandates that the state board, in supervising and controlling the educational interests of the state, be concerned that "each child shall have . . . equal opportunity to receive a suitable program of educational experiences."

In the present case, consistently with the provisions of § 10-76d, the plaintiff endeavored to prescribe a suitable special education program for Charles Lahda. When, however, the adequacy of the program was questioned by his parents, §§ 10-76h (c) through 10-76h (e) clearly provide for the involvement of and action by the state board of education through a duly-established hearing board to fulfill the general mandate of § 10-4a that the state be concerned with ensuring each child's equal opportunity to receive a suitable program of educational experiences.[3]

---

[3] Although General Statutes § 10-4b in general mandates that if the state board finds that a local board of education has failed adequately to provide such an opportunity the state board "shall conduct an inquiry to identify the cause of such failure and shall determine what recommendations should be made as to the necessary remedies to be pursued by the responsible local or state agencies," it is clear that §§ 10-76h (c) through 10-76h (e) provide a

The hearing board's determination that Manchester's education program did not adequately meet Charles' needs and that the program was unlikely to undergo significant programmatic change in the 1976-77 school year is a clear rejection of that program within the authority provided for in § 10-76h (e). Once this rejection had been made, and in light of its finding that the Intensive Education Center provided an effective program for Charles which allowed "for a better prognosis regarding Charles' academic growth,"[4] the hearing panel's order that the plaintiff pay all reasonable

---

separate and specific due process remedy to resolve disputes over the adequacy of special education programs.

" 'Statutes are to be construed in light of their legislative history, their language, the purpose they are to serve, and the circumstances surrounding their enactment.' " *Schwarzschild* v. *Binsse*, 170 Conn. 212, 216, 365 A.2d 1195; see also *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 97, 291 A.2d 721.

In the legislative proceedings prior to the enactment of § 10-76h; 14 H.R. Proc., Pt. 13, 1971 Sess., p. 5588; it was stated: "[§ 10-76h] provides a specific review procedure to settle disputes by parents and school boards over special education services. The bill cures a defect in the original legislation and provides the unfortunate parent with children with learning difficulties, a particular type of review."

Section 10-4b provides only for a determination of recommendations while § 10-76h (e) mandates that the state board prescribe alternate special education programs. The language and the legislative history of § 10-76h (e) clearly indicate that it is tailored to resolve specific disputes, while § 10-4b is concerned with the broader, systemwide educational interests defined in § 10-4a in its entirety and thus cannot serve as a controlling framework for § 10-76h (e).

[4] The plaintiff disputes this finding of the hearing panel as not supported by the facts. The director of the Center testified with respect to the program, however, and for the Court of Common Pleas to substitute its judgment for that of the agency as to the weight of this testimony on questions of fact would be in clear contravention of General Statutes § 4-183 (g). See *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840; *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles*, 165 Conn. 559, 563, 345 A.2d 520.

educational costs at the Intensive Education Center for the academic year 1976-77 must be viewed as a prescription of an alternate special education program within the purview of § 10-76h (e). There is certainly no prohibition in § 10-76h (e) against a prescription of private placement which is provided for as one method by which a local board of education may satisfy its obligation to provide special education. General Statutes § 10-76d (d). The hearing panel had found the Center's program adequate. Thereafter to require that Charles return to Manchester's program would have been to relegate him to a program it had deemed inadequate and would have thus been in contravention of the state board of education's duty to see that each child has an equal opportunity to receive a suitable educational program. Since the financial responsibility for special education programs, however prescribed and however provided, is lodged, pursuant to § 10-76d, with local boards of education, the hearing panel's order of payment is in accord with the statutory obligations for special education.[5]

## II

We are in agreement with the plaintiff that unilateral action by a parent in placing a child in a private school does not obligate a local board of education to reimburse the parents pursuant to § 10-76d. See *Lux* v. *Connecticut State Board of Education,* 34 Conn. Sup. 257, 386 A.2d 644, which is relied upon by the plaintiff. We do not agree, however, that enrollment of Charles at the Intensive Education Center can, under the facts of this case,

---

[5] Any local board which makes a private placement in conformity with statutory requirements is reimbursed by the state for two-thirds of the cost of the private program. General Statutes § 10-76g.

be considered a unilateral action barring reimbursement. The parents of Charles exhausted every remedy provided for by statute. They met with their son's local planning and placement team in an effort to improve what they considered and believed was an inadequate program for him. Only after procedural problems delayed and imperiled a meeting with the local board's central planning and placement team concerning the hiring of an aide for Charles did they seek mediation. When mediation failed, they sought review of the local board's program by the state board of education. At this point, Charles' parents faced a dilemma: before the state board could hear and decide their appeal to it, the school year would start. They could either return Charles to the Keeney School program which they, his teacher, and the local planning and placement team felt was inadequate and await the state board's decision, thus removing themselves from financial obligation, or they could enroll Charles at a private facility they had investigated and found suitable and anticipate that the state board of education would (1) find the Manchester program inadequate and (2) find the Center's program suitable as a prescriptible alternate special education program. The Lahdas, by taking the latter course, were acting at their peril insofar as reimbursement was concerned. If the state board did not reject the Manchester program and prescribe the Center's program, they would not be reimbursed for their expenses.

The facts of *Lux* v. *Connecticut State Board of Education,* supra, are readily distinguishable from the present case. In *Lux,* the plaintiffs did not request the local board of education to provide an adequate special education program for their child.

When the local board of education attempted to fulfill its statutory obligation by recommending placement in a public school special education program, the plaintiffs refused and insisted on maintaining their child at a private school. Perhaps the most important distinction between *Lux* and the present case is that when the plaintiffs in *Lux* appealed to the state board of education asking for reimbursement for their expenses in placing their child in a private facility, the state board found that the local program was adequate for their child's needs. Id., 261.

Since the program at the Intensive Education Center was approved and prescribed by the state hearing board in its decision, the initial placement of the child in the Center's program, under the facts of this case, must be considered immaterial. As we determined previously, it was within the state hearing board's statutory authority to order reimbursement for the private placement. Upon appeal under the Uniform Administrative Procedure Act the trial court, pursuant to General Statutes § 4-183, did not err in so concluding.

There is no error.

In this opinion the other judges concurred.