Mark LOMBARDI, an Infant, by his natural father, Vincent Lombardi, and on behalf of all those similarly situated, Plaintiffs,

v.

Gordon M. AMBACH, Commissioner, State Education Department, Defendant.

79 C 1396.

United States District Court, E. D. New York.

July 17, 1981.

Murray B. Schneps, New York City, for plaintiffs.

Robert D. Stone, New York State Dept. of Ed., Albany, N. Y., for defendant; by Seth Rockmuller, Albany, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, now aged 20, allegedly suffers from a neurological impairment that qualifies him to obtain through his local school board an individualized educational program appropriate to his special education needs, pursuant to N.Y.Educ. Law §§ 4401–4407 (McKinney's). The present action arises from the refusal of defendant Ambach, Commissioner of the New York State Education Department, to approve for the academic year 1976–1977 and thereafter, the plan of plaintiff's school board to contract for plaintiff's public education outside his school district and place him at the Trinity-Pawling School, a private residential school that purportedly offered an educational program appropriate to plaintiff's needs. The complaint alleges that the refusal unlawfully deprived plaintiff of a free education, in violation of the fifth and fourteenth amendments to the United States Constitution, federal statutory law, in particular, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the provisions of the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.*, and provisions of New York's constitution and statutory law.

For relief, plaintiff sought a declaration that the Commissioner's acts were unlawful as alleged, an injunction requiring defendant to execute contracts with the allegedly suitable and appropriate school attended by plaintiff and funding for his continued attendance, and a judgment directing reimbursement to plaintiff for his payment for education services which defendant did not pay but allegedly should have.[1] The action is now before the Court on plaintiff's motion for summary judgment, Rule 56(a), F.R.Civ.P., and defendant's motion to dismiss the complaint, Rule 12(b)(6), which has been treated by the parties as one for summary judgment. For the reasons that follow plaintiff's motion is denied, defendant's motion is granted and the action is dismissed.

Before the merits of the motions are discussed it will be helpful briefly to put this lawsuit in the statutory and administrative context from which it arose, *viz.*, the provision of free public education to handicapped children. While § 504 of the Rehabilitation Act generally proscribes discrimination against any "otherwise qualified handicapped individual" in any program or activity receiving federal funds, the Education for All Handicapped Children Act, *supra*, provides a detailed, comprehensive scheme for assuring that handicapped children obtain an appropriate, free education.

States that wish to alleviate the financial burden of providing appropriate educational services for handicapped children can receive the federal funds made available by this Act on a fiscal year basis, by complying with various requirements of the federal statute and implementing regulations, 45 C.F.R. Part 121a. To be eligible for these funds the State must have "in effect a policy that assures all handicapped children the right to a free appropriate public education," 20 U.S.C. § 1412(1), and a plan modeled on the provisions of 20 U.S.C. § 1413(b), detailing the policies and procedures that will insure there are sufficient kind and number of facilities, personnel and services throughout the State to achieve the goal of educating handicapped children, see 20 U.S.C. § 1412(2)(A)(iii). Under 20 U.S.C. § 1412(5)(A) the State also must establish the procedural safeguards set forth in 20 U.S.C. § 1415.

Under its plan the State must ensure that an "individualized educational program" is established, and revised annually, for each handicapped child. See 20 U.S.C. § 1414(a)(5). In New York this duty has devolved on the board of education for each school district. Through a duly established "committee on the handicapped," each school board must ascertain the number of handicapped children within the district and the nature of each child's handicapping condition. N.Y.Educ. Law, § 4402.1.a, b(1), (3). The committee on the handicapped is directed to "review and evaluate all relevant information" about each child and to make recommendations as to appropriate educational programs and placement. *Id.*, § 4402.1.b(3)(a), (b).

Federal law also requires that the responsible State educational agency or unit "insure that a continuum of alternative placements is available to meet the needs of handicapped children for special education," 45 C.F.R. § 121a.551(a), as part of the State's general obligation to insure that to "the maximum extent appropriate" handicapped children are educated with children who are not handicapped, 20 U.S.C. § 1412(5)(B); 45 C.F.R. § 121a.550(b). When children are placed in private schools the State must insure that this occurs "at no cost to their parents." 20 U.S.C. § 1413(4)(B)(i). In "all such instances," however, "the State educational agency shall determine whether such [private] schools and facilities meet the standards that apply to State and local educational agencies and [shall insure] that children so served have all the rights they would have if served by such agencies." 20 U.S.C. § 1413(4)(B)(ii).

---

[1]. The complaint also requested a determination that the action be permitted to proceed as a class action, Rule 23, F.R.Civ.P. By memorandum order dated May 5, 1980, the Court denied plaintiff's motion for an order of class determination.

In New York, to satisfy its obligation "to furnish suitable educational opportunities for handicapped children," N.Y.Educ. Law § 4402.2.a, the local board of education "shall select the most reasonable and appropriate special service or program for such children" from the programs listed in N.Y. Educ. Law § 4401.2, which include "contracts with private residential schools which have been approved by the commissioner and which are within the state for special services or programs," *id.*, § 4401.2.g. "All contracts with private schools pursuant to the provisions of paragraphs d, e, f, g, h and *l* of [§ 4401.2] shall be subject to the approval of the commissioner." *Id.*, § 4402.2.-b(2).

The procedural safeguards required by 20 U.S.C. § 1412(5)(A) to be provided by the State plan must include an opportunity for an impartial due process hearing at which the parents or guardian of a handicapped child may "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). If the State educational agency does not conduct the hearing itself, there must be opportunity for the aggrieved party to appeal the decision from the local educational agency to the State agency, which must render an independent decision after impartial review of the hearing below. 20 U.S.C. § 1415(b)(2), (c). Any party "aggrieved" by the State agency's findings or decision under § 1415(c) "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section [§ 1415]," in any State court of competent jurisdiction, or in federal district court "without regard to the amount in controversy." 20 U.S.C. § 1415(e)(2). With respect to placement of a handicapped child in a private school, which is at the core of this lawsuit, it bears noting that "disagreements between a parent and a public agency regarding the availability of a program appropriate for the child, and the question of financial responsibility, are subject" to these due process procedures. 45 C.F.R. § 121a.403(b).

At the outset, the Court is confronted with defendant's contention, based on the Court of Appeals' recent decision in *Riley v. Ambach*, No. 80–7600, slip op. 3113, (May 19, 1981), that the action is presently unsuited for consideration on the merits because plaintiff has not exhausted his administrative remedies. On the authority of that case we conclude that exhaustion is required, and that the action should be dismissed.

In *Riley v. Ambach*, plaintiffs challenged actions of New York State and its Commissioner of Education which (1) defined as handicapped only those learning disabled children who exhibited a discrepancy of 50% or more between actual and expected achievement; and (2) removed from a list of schools qualified to meet the educational needs of handicapped children like plaintiffs all residential schools serving children with specific learning disabilities. Although the district court had reached the merits and enjoined these actions as inconsistent with the federal scheme, the Court of Appeals reversed, holding the plaintiffs improperly failed to exhaust administrative remedies.

Observing that "[t]here are cases in which '[s]tate administrative remedies have been deemed inadequate by federal courts, and hence not subject to the exhaustion requirement, on a variety of grounds,' *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 [93 S.Ct. 1689, 1696 n.14, 36 L.Ed.2d 488] (1973)," *Riley v. Ambach, supra*, slip op. at 3124–25, including agency predetermination of the issue, the court of appeals acknowledged that the "rule" requiring a plaintiff to "exhaust state administrative remedies before bringing a federal suit under the Education for All Handicapped Children Act has accordingly been bypassed in cases where the exercise of state administrative remedies would be futile," *id.*, slip op. at 3125. Nevertheless the court determined that plaintiffs had not made "the requisite showing that they cannot secure the relief they seek from the State." *Id.*

The court recognized that residential placement for children with learning disa-

bilities had been "rejected in advance by the Commissioner" but nonetheless required exhaustion because "the Commissioner might reverse himself in a compelling case," *id.*, slip op. at 3128. The court explained that while "[n]ormally, exhaustion would not be required simply to afford an administrator an opportunity to revise an earlier decision or to make an exception to a previously promulgated rule of general application," *id.*, slip op. at 3129, adjudication of the validity of the Commissioner's ruling on residential placements would be "significantly enhanced by the details of a particular case." *Id.*

We think the *Riley* court's reasoning has application here. From the material appended to the parties' affidavits, it appears that at the end of the 1975–1976 academic year, which plaintiff had passed at an approved school in New York City, plaintiff's educational needs were reassessed and determined to require placement in a different school. The Port Jefferson school district committee on the handicapped recommended that plaintiff be placed at Trinity-Pawling in May 1976. In recognition that the school was not approved by the Commissioner for special placements, legal opinion was sought on behalf of the school board as to whether the board could contract to place a student at an unapproved private school, and who would bear the cost. The response of counsel for the State Education Department in two letters dated June 9, 1976 and June 17, 1976, was that the board of education could not contract with an unapproved school for the placement. The record does not show that plaintiff's parents undertook further proceedings before the committee on the handicapped or the board after they were informed that their son could not be placed at Trinity-Pawling at public expense.

In September 1976 plaintiff began attending school at Trinity-Pawling. In October 1976 the Port Jefferson board of education, through Dr. Joseph Ennis, director of Guidance and Pupil Personnel Services at a Port Jefferson high school, renewed its attempts to gain approval for plaintiff's placement at Trinity-Pawling. This correspondence culminated in a January 1977 application for approval, which was rejected by a February 1977 letter from State Education Department counsel reaffirming that a board of education did not have authority to contract with an unapproved school. Thereafter plaintiff instituted an Article 78 proceeding challenging the Commissioner's refusal to approve the contract. The lower court's dismissal of the petition was affirmed, *Lombardi v. Nyquist*, 63 A.D.2d 1058, 406 N.Y.S.2d 148 (3d Dept.), *leave to appeal denied*, 45 N.Y.2d 710, 409 N.Y.S.2d 1029, 381 N.E.2d 616 (1978).

Although we recognize that plaintiff has already expended much effort in seeking to establish his rights, the course of action he has pursued does not satisfy the exhaustion of remedies that the Education for the Handicapped Act requires. Essentially this lawsuit challenges the lawfulness of the Commissioner's interpretation of New York law to prohibit contracting for the placement of handicapped children in a school that is not on the approved list, even though only that school assertedly has the program that the local board of education believes is appropriate for one of its pupils.

Plainly, one of the central, and contested issues of fact in the controversy is whether Trinity-Pawling was the only educational placement appropriate to meet plaintiff's special education needs. That determination should have been made after ample investigation and a hearing, either before the committee on the handicapped or the board of education. As plaintiff's papers indicate, the reason this was not done, despite the advice of State Education Department counsel to seek alternative placements, was that initially plaintiff's parents and the responsible board of education members were of the same mind as to where plaintiff should have been placed. But once the Commissioner's interpretation of the law had frustrated these plans, it became the board's duty to place plaintiff in accordance with the law. On their part, plaintiff's parents were free to challenge the board's determination, and insist on Trinity-Pawling, through the due process

hearings and Commissioner's review accorded them by N.Y.Educ. Law § 4404.

In this case we believe that, as was true in *Riley v. Ambach, supra,* the ultimate adjudication concerning the validity of the Commissioner's challenged action would have been "significantly enhanced by the details of the particular case." Slip op. at 3129. Indeed, close scrutiny of the parties' papers suggests that a more closely controverted administrative process might have uncovered a school with a suitable program. Although it may not have been plaintiff's preference, it might have seemed appropriate upon reflection.

Notwithstanding our determination that his suit may not be heard until the administrative proceedings are exhausted, we believe it proper to address briefly some of defendant's contentions, since we conclude that they would foreclose suit in this court if plaintiff elected to pursue the administrative remedy and renew his action if still dissatisfied.

■ First, plaintiff's claim for injunctive relief is now moot. Plaintiff's father's affidavit supporting the motion for summary judgment acknowledges that when "the local high school developed an appropriate program suitable" to plaintiff's needs, "he commenced attendance in that program, from January 1979 to the present time." The existence of an admittedly "appropriate" program in plaintiff's local school very plainly renders nugatory plaintiff's request for declaratory and injunctive relief as to the future application of the Commissioner's interpretation, since he is no longer harmed by it.

■ Furthermore, as to the period from September 1976 through December 1978, when plaintiff attended Trinity-Pawling at his parents' expense without reimbursement from the State, we find his claim for reimbursement for that period barred in this court by the eleventh amendment's declaration that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Plaintiff has offered no meaningful distinction between the present case and *Edelman v. Jordan,* which similarly sought reimbursement from a State of federal moneys allegedly wrongfully withheld. We note that here, as in *Edelman,* the reimbursement plaintiff seeks "will obviously not be paid out of the pocket" of named defendant Ambach, but "must inevitably come from the general revenues" of New York. 415 U.S. at 664, 665–66, 94 S.Ct. at 1356–57.

As to plaintiff's attempt to avoid the eleventh amendment bar by arguing that the funds New York received pursuant to the Education for the Handicapped Act are required not to be commingled, see 20 U.S.C. § 1413(a)(9), we think this argument "neglects the fact that where the State has a definable allocation to be used in the payment of public aid benefits, and pursues a certain course of action such as [committing funds for payment of contract services provided by approved schools only] the subsequent ordering by a federal court of retroactive payments ... will invariably mean there is less money available for the continuing obligations of the public aid system." *Edelman v. Jordan,* 415 U.S. at 666 n.11, 94 S.Ct. at 1357 n.11.

Finally, as to plaintiff's remaining request for a declaratory judgment that the Commissioner's action between 1976 and 1978 was unlawful, we note that a " 'declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.' *Eccles v. Peoples Bank,* 333 U.S. 426, 431 [, 68 S.Ct. 641, 644, 92 L.Ed. 784] (1948)." *Hospital Association of New York State, Inc. v. Toia,* 577 F.2d 790, 798 (2d Cir. 1978). The only purpose we can discern in proceeding to consider the request for declaratory relief is that a judgment in plaintiff's favor might facilitate his claim for monetary relief in the State

courts. We do not think that would be an appropriate exercise of federal judicial resources. See *id.*

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion to dismiss is granted.

SO ORDERED.

The Clerk of the Court is directed to enter judgment for defendant. The Clerk is further directed to forward copies of this memorandum and order to counsel for the parties.