[Civ. Nos. 25824, 27087. Fourth Dist., Div. Two. June 10, 1982.]

NEWPORT-MESA UNIFIED SCHOOL DISTRICT OF ORANGE COUNTY, Plaintiff and Appellant, v.
ROBERT M. HUBERT et al., Defendants and Respondents.

COUNSEL

Parker & Covert, Clayton H. Parker, Spencer E. Covert, Jr., and Margaret A. Chidester for Plaintiff and Appellant.

Morrison & Smith, Walt D. Mahaffa and Ronald M. Morrison for Defendants and Respondents.

Catherine Blakemore as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**MORRIS, P. J.**—The Newport-Mesa Unified School District appeals from a judgment denying declaratory relief. The case involves the extent of the district's responsibility to pay for the private education of Dr. and Mrs. Hubert's son, Bernt, under the federal Education for All Handicapped Children Act of 1975 (20 U.S.C. § 1401 et seq.). We reverse.

STATUTORY SCHEME

The Education for All Handicapped Children Act of 1975 (EAHCA) expanded an existing program providing federal grants to states for the education of handicapped children.[1] The stated purpose of the legislation is "to assure that all handicapped children have available to them

---

[1] The EAHCA defines "handicapped children" as meaning "mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services." (20 U.S.C. § 1401(1); see also 34 C.F.R. § 300.5.)

... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children." (Pub. L. No. 94-142, § 3(a); 89 Stat. 775.)

To receive federal funds under the EAHCA, a state must fulfill a number of eligibility requirements. Two such requirements are that the state must have "in effect a policy that assures all handicapped children the right to a free appropriate public education" (20 U.S.C. § 1412(1)) and that the state must establish "procedural safeguards as required by section 1415 ...." (20 U.S.C. § 1412(5)(A).)

The procedures required by section 1415 are "to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by [any State educational agency, local educational agency, or intermediate educational unit]." (20 U.S.C. § 1415(a).) Among the procedural safeguards is the right of the parents or guardian to have an "impartial due process hearing" if the local educational agency refuses to change a child's educational placement. (20 U.S.C. § 1415(b)(2).) If the hearing is conducted by the local educational agency, the party aggrieved by the decision rendered in the hearing is entitled to an impartial review of the hearing by the state educational agency. (20 U.S.C. § 1415(c).) Finally, a party aggrieved by the decision from the hearing or the review of the hearing may seek relief in a "State court of competent jurisdiction or in a district court of the United States ...." (20 U.S.C. § 1415(e)(2).)

At the heart of the controversy in the present case is what is commonly referred to as the "stay put" or "status quo" provision. Section 1415(e)(3) states, "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed."

The procedural safeguards enumerated in section 1415 are interpreted in the Code of Federal Regulations (34 C.F.R. § 300.500 et seq.) and are codified in this state in the Education Code (at § 56500 et seq.) and the California Administrative Code (at § 3300 et seq. of tit. 5). Thus, variations of the section 1415 "stay put" provision appear in the Code of Federal Regulations (34 C.F.R. § 300.513), the Education Code (§ 56505, subd. (d)), and the Administrative Code (tit. 5, § 3308, subd. (m); see also § 3124, subd. (m)).[2]

■ California law also coincides with the EAHCA in having the general goal of assuring all handicapped children the right to a free appropriate public education. (See Ed. Code, § 56000.) The Legislature has expressly stated its intention "to assure that all individuals with exceptional needs are provided their rights to appropriate programs and services which are designed to meet their unique needs under Public Law 94-142 [the EAHCA]." (*Id.*)

If the required free appropriate education cannot be provided in the public schools, a student is entitled to an appropriate education at a private school at no cost to his or her parents or guardian. (20 U.S.C. § 1413(a)(4)(B); Ed. Code, § 56365.) The private school need not be in California for a California school district to be responsible for the cost. (Ed. Code, § 56365, subd. (d); Cal. Admin. Code, tit. 5, § 3208.) However, a school district is not required to pay for a student's private school education if he or she is placed there by his or her parents and there is an available free appropriate public education. (34 C.F.R. § 300.403(a); Ed. Code, § 56365, subd. (a).)

---

[2]While the federal and California "stay put" provisions are similar, they are not identical. 20 United States Code section 1415(e)(3) requires the status quo to be maintained "[d]uring the pendency of *any* proceedings conducted pursuant to this section" (italics added), which includes a civil action in a state or federal court. Indeed, the parallel federal regulation expressly states that the child must remain where he or she is "[d]uring the pendency of any administrative *or judicial* proceeding regarding a complaint . . . ." (34 C.F.R. § 300.513(a), italics added.) California law, however, appears to require the maintenance of the status quo during administrative proceedings only, despite the fact that the stated intent of the Administrative Code chapter on individual protections and due process procedural safeguards is "to assure conformity with the [EAHCA] . . . ." (Tit. 5, § 3300, subd. (a); see also Ed. Code, § 56500.1.) Education Code section 56505, subdivision (d) states that, absent an agreement to the contrary, the pupil shall remain in his or her present placement "[d]uring the pendency of the hearing proceedings, including the actual state-level hearing . . . ." Similarly, section 3308, subdivision (m) of title 5 of the California Administrative Code requires a student to remain in his or her then current program(s) "[d]uring the pendency of the fair hearing proceedings . . . ." The difference, however, is not significant in the present case.

## FACTS

Bernt Hubert is an educationally handicapped individual who was enrolled in special education classes at the Corona Del Mar High School of the Newport Mesa Unified School District. Bernt's parents became dissatisfied with his progress at the high school and requested that his individualized education program (see 20 U.S.C. § 1401(19); Ed. Code, § 56340 et seq.) include the placement of Bernt at the Provo Canyon School, a private school in Utah. The school district refused, claiming it could provide an appropriate education within the public school system. In light of the dispute, the Huberts requested a due process hearing in October 1979. One month later, before the due process hearing was held, Bernt's parents unilaterally removed Bernt from Corona Del Mar High School and enrolled him, at their own expense, at Provo Canyon School.

A fair hearing panel met three times during January 1980 and decided to defer its final decision until after Bernt could undergo a comprehensive inpatient diagnostic evaluation. Following the evaluation, the panel met again in June 1980 and issued its decision. The panel found that the school district did not have an appropriate educational program and that Bernt was appropriately placed at Provo Canyon School. Additionally, the panel ordered the school district to "pay for the cost of BERNT'S education and related services at Provo Canyon School from the date of placement [i.e., when Bernt's parents first enrolled him at the private school] ...."

The school district appealed the fair hearing panel's decision to the State Superintendent of Public Instruction. The superintendent affirmed the panel's decision on September 29, 1980.

On October 30, 1980, the school district filed the instant action for declaratory relief. The only portion of the superintendent's decision that was challenged was the order holding the school district financially responsible for Bernt's expenses at Provo Canyon School incurred during the pendency of the administrative proceedings. The school district has conceded that Provo Canyon School was the appropriate placement for Bernt and has accepted its responsibility to pay for his education at Provo Canyon School from September 29, 1980, the date of the superintendent's decision. The trial court ruled in favor of the Huberts and two appeals followed.[3]

---

[3]There are two separate appeals because of the somewhat unorthodox procedural aspects of this case. Following the school district's complaint for a declaration that it was

DISCUSSION

■ The issue to be decided is whether the Huberts should be reimbursed for the costs of Bernt's private schooling that were incurred during the pendency of the administrative proceedings held to determine the appropriate placement for Bernt. The Huberts contend that to deny them reimbursement would amount to a deprivation of Bernt's statutorily guaranteed right to a free appropriate education. They claim that they took a financial gamble by placing Bernt in private school prior to the conclusion of the administrative proceedings. If the final decision had been that the school district was capable of providing an appropriate education, the Huberts concede that they would have no right to reimbursement. However, because their position has been vindicated, they assert that the school district should comply with its statutory duty to provide a free appropriate education by paying for that which the administrative hearings determined it should have been paying for all along. The school district contends that the Huberts are not entitled to reimbursement, because they violated the "stay put" provision of the applicable state and federal laws. Although the Huberts' position is persuasive from a policy standpoint, the law as written by Congress and the California Legislature supports the school district.

Congress has set out in explicit detail the manner in which complaints concerning the provision of a free appropriate education are to

---

not responsible for the cost of Bernt's education at Provo Canyon School prior to September 29, 1980, the Huberts filed a petition for writ of mandate seeking reimbursement for those costs. On April 14, 1981, an "order after hearing" was filed declaring the writ of mandate petition moot, ordering the school district to pay the Huberts "as ordered by the Fair Hearing Administrative decision," awarding court costs to the Huberts, and denying the Huberts' request for attorney's fees. That same day, the court denied the school district's request for findings of fact and conclusions of law. On April 22, the court amended its order nunc pro tunc to award $2,500 in attorney's fees to the Huberts. On May 13, the school district filed a notice of appeal "from the order entered April 14, 1981." (4 Civ. 25824.)

In July, the Huberts' attorney filed a declaration "in support of judgment" and Bernt's father filed a declaration "re: judgment." The father's declaration included a list of expenses that he had paid for his son's education at Provo Canyon School, totaling $22,501.98. On July 7, the trial judge signed and filed a judgment which was consistent in all respects with the April 14 order, as amended, except that the judgment also stated that $22,501.98 was the amount the school district was required to pay to the Huberts "as ordered by the Fair Hearing Administrative decision." On July 16, the school district filed a second notice of appeal, this time "from the Judgment/Order which was entered on July 7, 1981." (4 Civ. 27087.)

We conclude that the appeal in 4 Civil 25824 should be dismissed, because it was not taken from an appealable order. (Code Civ. Proc., § 904.1.) The appeal in 4 Civil 27087, having been taken from a judgment, will be decided on the merits.

be handled, and California, as required, has established procedures in conformity with the federal law. There must be "an opportunity to present complaints with respect to any matter relating to the . . . educational placement of the child . . . ." (20 U.S.C. § 1415(b)(1)(E).) Whenever such a complaint is presented, there must be "an opportunity for an impartial due process hearing" (*id.*, § 1415(b)(2)) and "any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency . . ." (*id.*, § 1415(c)). However, "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child *shall* remain in the then current educational placement of such child . . . ." (*Id.*, § 1415(e)(3), italics added.)

In the present case, the Huberts had a due process hearing on their complaint concerning Bernt's educational placement, and the school district, as the party aggrieved, appealed the hearing decision to the Superintendent of Public Instruction. But, contrary to the express mandate of state and federal law, the Huberts changed the educational placement of their son during the pendency of the administrative proceedings without the consent of the state or local educational agency. Although the statutes do not address the issue of reimbursement if parents should violate the "stay put" provision, it is inconceivable that the procedural system structured by Congress and adopted by the California Legislature would require parents to be compensated for costs they incurred in violating that very system. It is even less likely that Congress and the California Legislature intended that a child's early transfer to a more appropriate educational placement at public expense should depend upon the financial ability of the parents to initially pay the cost of private placement and assume the risk of obtaining reimbursement only if the administrative proceeding vindicates the parent's choice. In short, we see no reason to doubt that Congress meant what it said when it enacted section 1415(e)(3).

The Huberts' argument that a failure to reimburse them is contrary to the purpose of EAHCA is unavailing. It is true that the legislation was passed to assure all handicapped children a free appropriate public education and that it was intended to "result in maximum benefits to handicapped children and their families." (Sen. Rep. No. 94-168, 1st Sess., p. 6 (1975), reprinted in 1975 U.S. Code Cong. & Admin. News, at p. 1430.) However, within this general statutory framework, Congress enacted a specific rule, the "stay put" provision, which directly

applies to this case. The purpose of EAHCA would not be served by an interpretation which would in effect make the "stay put" provision applicable only to the handicapped children of parents who are not wealthy enough to assume the financial risk of giving their child a private education. In any event the general intent of the EAHCA cannot negate the clear and unambiguous meaning of one of its specific provisions.

The Huberts also direct our attention to the state and federal regulations which state that the "stay put" provision does not preclude a school district from removing a child from school if the child is endangering himself or others. (See comment to 34 C.F.R. § 300.513; Cal. Admin. Code, tit. 5, § 3308(m)(1).) It is contended that because parents were not included in this "exception," both Congress and the California Legislature intended to limit the unilateral actions of school districts only, and not of parents. Again, the Huberts' argument avoids dealing with the clear language of the law. If section 1415(e)(3) was not meant to also proscribe unilateral parental action, that section would not require the agreement of the parents *and* the state or local educational agency to alter the status quo.

The same conclusion was reached in the similar case of *Stemple* v. *Board of Ed. of Prince George's Cty.* (4th Cir. 1980) 623 F.2d 893, cert. den. (1981) 450 U.S. 911 [67 L.Ed.2d 334, 101 S.Ct. 1348]. There, as here, the parents sought reimbursement after unilaterally moving their handicapped child to a private school prior to any administrative hearings.[4] The court ruled that section 1415(e)(3) imposed a duty on the parents not to remove their child from the public schools while the administrative proceedings were pending and stated, "Of course, that duty may not be totally enforceable by the state, but it certainly negates any right on the part of parents, in violation of the duty and in the absence of agreement, to elect unilaterally to place their child in private school and recover the tuition costs thus incurred." (*Id.*, at p. 897.)

In *Monahan* v. *State of Neb.* (D.Neb. 1980) 491 F.Supp. 1074, affirmed in part, vacated in part (8th Cir. 1981) 645 F.2d 592, the "stay put" provision was likened to "an automatic preliminary injunction." (491 F.Supp. at p. 1088.) The court held that "the maintenance of the status quo under the [EAHCA] requires not only that a child be edu-

---

[4]The *Stemple* case is not factually identical to the present case. The most significant difference is that the ultimate ruling of the administrative board was against the parents' choice of schooling in *Stemple*.

cated in the same placement during any proceeding under the Act, but also that no change in the financing of that placement occur." (*Id.*, at p. 1089.)[5]

*Anderson* v. *Thompson* (7th Cir. 1981) 658 F.2d 1205 arrived at the same result as *Stemple* and *Monahan*, but for a different reason. The *Anderson* court first stated that "because we are certain that parents have the right to move their handicapped children to private schools, we view section [1415(e)(3)] as expressing a congressional preference rather than as creating a statutory duty." (*Id.*, at p. 1209.) Reimbursement was not permitted, however, because it was concluded that the EAHCA did not provide for a damages remedy absent exceptional circumstances.[6]

Nothing in the legislative history of the EAHCA is contrary to our holding. The discussions of the "stay put" provision itself are nothing more than paraphrases of the statutory language. (See, e.g., Sen. Conf. Rep. No. 94-455, 1st Sess., p. 50 (1975), reprinted in 1975 U.S. Code Cong. & Admin. News, at p. 1503; remarks of Sen. Williams, 121 Cong. Rec. 37416 (1975).)[7] As for the procedural safeguards in general, a major concern expressed was that all proceedings to resolve complaints be conducted expeditiously so as to minimize the time a handicapped student was without an appropriate education.[8] This indicates congressional concern for the child who is inappropriately placed, but also shows an intent that the problem be remedied through the impartial hearing process and not by unilateral action.

[5]On appeal, the Eighth Circuit affirmed this portion of the district court's decision, stating that in that case, "the decision to place Daniel in the Millard School District was made by his parents unilaterally; they must bear the resulting tuition expense." (*Monahan* v. *State of Neb.* (8th Cir. 1981) 645 F.2d 592, 598.)

[6]Since we hold that the parents here are not entitled to reimbursement because they violated section 1415(e)(3), we need not decide whether, in another case, damages could be awarded in an action brought under the EAHCA. We note, however, that other courts have reached decisions contrary to *Anderson*, finding that damages are allowed because the EAHCA allows a court to "grant such relief as the court determines is appropriate." (20 U.S.C. § 1415(e)(2).) (See, e.g., *Boxall* v. *Sequoia U. High Sch. Dist.* (N.D.Cal. 1979) 464 F.Supp. 1104, 1112; but see also *Lombardi* v. *Ambach* (E.D.N.Y. 1981) 522 F.Supp. 867, 872 (claim for reimbursement barred in federal court by 11th Amendment).)

[7]The conference report noted that "language is also adopted to require that during the pendency of any administrative or judicial proceedings regarding a complaint, unless the State or local educational agency and the parents or guardian of the child otherwise agree, the child involved in the complaint shall remain in his or her present educational placement . . . ."

[8]Senator Williams stated, "I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental

Although we find no right to reimbursement in the present case, we do not read section 1415(e)(3) as an absolute bar to the recovery of costs incurred by parents in unilaterally moving their child to a private school during the pendency of the due process proceedings. In some cases, such as when the proceedings take an inordinate amount of time contrary to congressional intent (see fn. 8 and text, *ante*), such action by the parents might be justified.[9] However, no circumstances excusing a violation of the "stay put" provision have been presented in this case.[10]

---

to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development. Thus, in view of the urgent need for prompt resolution of questions involving the education of handicapped children it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable consistent with fair consideration of the issues involved." (121 Cong. Rec. 37416.)

Similarly, Senator Stafford stated, "The conferees [the House and Senate members who drafted the final version of the EAHCA] are cognizant that an impartial due process hearing may be required to assure that the rights of the child have been completely protected. We did feel, however, that the placement, or change of placement should not be unnecessarily delayed while long and tedious administrative appeals were being exhausted. Thus, the conference adopted a flexible approach to try to meet the needs of both the child and the State." (121 Cong. Rec. 37412.)

[9]Such a position has been taken in other cases. In *Foster v. District of Columbia Bd. of Ed.* (D.D.C. 1981) 523 F.Supp. 1142, a mother unilaterally moved her child to a private school and then requested reimbursement at a subsequent due process hearing. The court found that the "statutory scheme specifically prohibits the plaintiffs in the instant case from the self-help of placing the child in a private school and then later seeking reimbursement of tuition." (*Id.*, at p. 1144.) However, the court stated that "[s]elf-help may be sanctioned, indeed requisite, in some exceptional cases, with unique factual occurrences, where the parent has exhausted all other avenues for relief or other considerations of justice compel it." (*Id.*, at p. 1146.) The court went on to note that "[t]he purpose of the due process hearing procedures is to assure that parents' grievances are addressed quickly and efficiently by an impartial third party. One of the myriad of claims which a hearing may address is a parent's claim that she and her child have been so aggrieved by the actions of the school authorities that removal of the child from the public schools was a reasonable course of action." (*Id.*, at p. 1146, fn. 5.)

In *Anderson v. Thompson, supra*, 658 F.2d 1205, the court held that although damages should not generally be awarded in actions under the EAHCA, "we can envision at least two exceptional circumstances in which a limited damage award might be appropriate." (*Id.*, at p. 1213.) The two circumstances mentioned were the parents unilaterally changing the status quo when necessary to protect the child's physical health or when the school board "has acted in bad faith by failing to comply with the procedural provisions of section [1415] in an egregious fashion." (*Id.*, at p. 1214.)

[10]In their appellate briefs, both the parents and amici make allegations of facts purporting to justify the unilateral action that was taken. Parents claim that they placed Bernt at Provo Canyon School because he was a danger to himself, and amici assert that the school district did not fulfill its responsibility of holding a fair hearing within 35 days of the receipt of the parents' request for such a hearing (see Cal. Admin. Code, tit. 5, § 3308(e)). However, they are of no consequence on appeal since no such factual issues were presented to or decided by the trial court. This is evident from the following

Finally, we do not find applicable the cases cited by parents and amici. The opinions from other states' courts do not discuss federal law, but base their decisions solely on interpretations of their states' particular statutory schemes, which schemes appear to differ significantly from California law. (*Board of Ed. v. Conn. State Bd. of Ed.* (1980) 179 Conn. 694 [427 A.2d 846]; *Krawitz v. Com., Dept. of Ed.* (1979) 48 Pa.Commw.Ct. 155 [408 A.2d 1202]; *Amherst-Pelham Reg. School v. Dept. of Ed.* (1978) 376 Mass. 480 [381 N.E.2d 922].) The federal cases relied upon are not relevant since they deal with issues different than that present here. (*Cox v. Brown* (D.D.C. 1980) 498 F.Supp. 823 (preliminary injunction granted placing children in private schools); *Frankel v. Commissioner of Ed.* (S.D.N.Y. 1979) 480 F.Supp. 1156 (§ 1415(e)(3) not in issue); *Boxall v. Sequoia U. High Sch. Dist., supra*, 464 F.Supp. 1104 (§ 1415(e)(3) not in issue).) The only case that we have seen that truly supports the Huberts' position is *Blomstrom v. Massachusetts Dept. of Ed.* (D.Mass. 1982) 532 F.Supp. 707. With that case, we simply disagree. Although the court makes a strong policy argument,[11] we believe that the clear language of section 1415(e)(3) must prevail.

discussion, which occurred prior to oral argument in superior court:

"The Court: You guys are stipulating to submit the whole case, and I will decide the whole case and get it over with? You don't want a trial on the declaratory relief action?

"Mr. Mahaffa [parents' attorney]: We will, your honor. We really don't need a trial. The only part of the administrative decision the district is appealing is the legal issue. We don't need a trial. If we had never brought our motion for temporary relief and had set the matter for a trial date, we would have gone in on a summary judgment because we're looking solely to the legal issue, federal statute 1415(e) .... When that's resolved, the interpretation of that statute, it will afford relief either for their position or our position."

[11]The court held that the general intent of the EAHCA should govern the reimbursement issue, because "there is nothing in the legislative history that mentions, and therefore prohibits, reimbursement." (532 F.Supp. at p. 710.) The court also made the following comments: (1) "Since the EAHCA was a compromise that carefully considered budgetary constraints facing local communities and the problems inherent in evaluating children with special needs ... the best rule is one that forces each party to bear the costs of their own errors while simultaneously keeping in mind the best interests of the child" (*id.*, at p. 712); (2) "When the Act is considered in light of the practical application of the due process provisions the logical construction of § 1415(e)(2) and § 1415(e)(3) permits reimbursement. Given the inevitably protracted nature of any due process proceedings, the best interests of the child and his family would not be served by forbidding the parents to move the child" (*id.*); (3) "Congress did not intend to create a system that would cause a child to stay mired in an inappropriate program while the appellate mechanism slowly determined his fate. [Citation.] Permitting reimbursement is a sound compromise. If the school committee was initially wrong everyone would be restored to the position the statute initially sought to encourage. If the parent was incorrect they must bear the financial burden of giving their child a private education as any other parent would. In both cases, however, the child

The judgment against the Newport-Mesa Unified School District (4 Civ. 27087) is reversed.[12] The appeal from the "order after hearing" (4 Civ. 25824) is dismissed.

Kaufman, J., and Hamilton, J.,* concurred.

A petition for a rehearing was denied July 2, 1982, and respondents' petition for a hearing by the Supreme Court was denied August 25, 1982. Mosk, J., was of the opinion that the petition should be granted.

---

receives the education considered appropriate by his parents, the party normally vested with the power to make such decisions." (*Id.*, at p. 713.)

[12]Because the award of attorney's fees to the Huberts was made to them as the prevailing parties, we reverse that award solely because we have determined that they should not have prevailed. We do not consider the school district's argument that attorney's fees were awarded contrary to state and federal law.

*Assigned by the Chairperson of the Judicial Council.