[Civ. No. 3421. Third Appellate District.—February 21, 1929.]

H. O. NEWBERRY, Respondent, v. W. E. EVANS et al., Appellants.

W. F. Cowan and A. W. Hollingsworth for Appellants.

Barrett & McConnell and C. W. Anderson for Respondent.

JAMISON, J., *pro tem.*—The Wilfred Bellevue Drainage District is a duly organized and existing drainage district. The appellants were, during the times hereinafter specified, the directors thereof.

This controversy arose over the actions of appellants in constructing a ditch over the lands of one F. W. Wilson for drainage purposes without first securing his consent so to do and without instituting condemnation proceedings. Wilson brought suit against appellants for the damage inflicted upon his fruit-trees growing on said land, resulting from the manner in which said ditch was constructed, and for damage to his land caused by the caving in and washing away of the walls of said ditch, and by the overflow of the water from the ditch.

That case was originally commenced against the district and said directors jointly, but in the first amended com-

plaint the said drainage district was not included as a party defendant. It filed no answer, and the case was tried upon the theory of the individual liability of Evans, Pedrotti, and Morken alone. In that case the court rendered judgment in favor of Wilson and against Evans, Pedrotti, and Morken for $325 for the damage to his fruit-trees. After the rendition of the judgment Evans, Petrotti, and Morken entered into an agreement with Wilson, under which Wilson agreed to take $300 and his costs in settlement of the judgment, and in June, 1923, the $300, together with $82 costs, was paid to Wilson by Evans and Pedrotti, out of the funds of the said drainage district (Morken having ceased to be a director in March, 1923). The said directors also paid out from time to time from the funds of said district their own costs and expenses laid out and expended by them in that case. Up to the time that Morken ceased to be a director the amount so paid out by said directors from the funds of said district amounted to the sum of $156.60, the total amount so paid out by all the directors being the sum of $544.60.

Respondent is a land owner in said district and taxpayer therein and as such brought this action and prayed therein that judgment be rendered in favor of said district against these directors for the said sums so wrongfully misappropriated by them out of the funds of said district. Judgment was rendered in favor of said district and against the said Evans and Pedrotti for the sum of $544.60 and against the said Morken for $162.60, with interest thereon at seven per cent per annum from date of payment from the funds of the district of the various sums making up the amount of the judgment. From this judgment the said Evans, Pedrotti, and Morken have appealed.

This case was before this court upon a former appeal (*Newberry* v. *Evans et al.*, 76 Cal. App. 492 [245 Pac. 227]). That was an appeal by these appellants from a judgment in favor of said drainage district. Upon this appeal, after a very thorough consideration of the case, a reversal was had and the court in its opinion suggested that appellants, if so advised, might amend their answer in such manner that upon a new trial inquiry might be had into the following propositions, to wit: (1) Whether the district, by the compromise of the Wilson judgment, secured the

land, or the right to use the land damaged, and has been, or is now, as the effect of such compromise, in possession and control, either as owner or otherwise, and using the same for the purposes of its drainage system; (2) Whether defendant Morken was in any way connected with the alleged wrongful appropriation of the funds of the district to the payment of the Wilson judgment. And in this connection the court, speaking through Hart, J., said: "Justice plainly demands that these matters should be fully gone into. If the district is now, or has been, under the compromise of the Wilson judgment, in the enjoyment of the right to use the land of Wilson alleged in his complaint to have been damaged by defendants, then the district should be held to have taken said land according to the principles underlying the doctrine of eminent domain, and should be required to stand for the payment of the Wilson judgment, as compromised."

For a reversal of this case appellants are relying largely upon the insufficiency of the evidence to support certain findings of the court. One of these findings is to the effect that it is not true that said ditch was constructed on the Wilson land by said district, nor is it true that since its construction has it been, or is it now used as, a part of the drainage system of said district. That the said judgment awarded Wilson arose out of and was wholly for damages to his fruit-trees occurring from the construction of said ditch on his land, and that Wilson did not accept the $300 and $82 costs paid him in settlement and compromise of his judgment upon any understanding or agreement upon his part or upon the part of said district that same would be in satisfaction of all or any damage which had accrued to him by reason of the construction or maintenance of said ditch. Wilson testified that before the ditch was constructed he had a talk with appellants Evans and Pedrotti, who approached him for the purpose of getting his consent to allow the ditch to be placed over and across his land and that he refused to give the right of way; that the ditch was put across his land on New Year's Day, 1921, and the day following, which was Sunday, about thirty men being employed for that purpose, and that he knew nothing about it until the work was done; that at the time he agreed to

take $300 and costs in satisfaction of his judgment he stated to them that the judgment only covered the damage to the trees, and that he still retained the land, and that the district had no right to it; that on one occasion after the settlement of the judgment when appellant Morken and a Mr. Brewer came to his place and attempted to clean the ditch he warned them to stay off of his land and not to attempt to do any work on the ditch. He further testified that every fall he dug dirt into the ditch and threw brush in it to fill it up.

Stanley A. Stetson, who became a director in 1925, testified that after he became such director he had a conversation with Wilson regarding a right of way where the ditch is constructed and that Wilson told him that after the present suit was settled he would give them a right of way provided they would agree to build a ditch large enough to take care of the water. That he repeated this to the other directors and that Pedrotti said not to take Wilson's word, but that before they did anything to get a deed for the right of way. These statements of Stetson would indicate that the directors of the district, as late as 1925, did not consider that they had a right of way over Wilson's land for the ditch and that it was necessary to procure Wilson's consent or deed for same. Appellant Pedrotti testified that when the settlement of the Wilson judgment was made it was understood that the settlement was in payment of the damage done to Wilson's trees. It appears from this testimony that there was substantial evidence supporting the aforesaid finding of the court.

Appellant claims that admitting that the drainage district wrongfully appropriated the land of Wilson for a public use, that satisfaction of the Wilson judgment worked a dedication of the land to the district. It will be conceded that if appellant's land had been taken for a public use without his consent and without proceedings to condemn it, and was being occupied and used for a public purpose, and that under these conditions Wilson brought an action for his compensation for the taking of his land, that a judgment in his favor for such compensation would be a ratification upon his part of the unauthorized taking. (10 Cal. Jur., p. 387; *McDougald* v. *Southern Pac. R. R. Co.*, 162 Cal. 1 [120 Pac. 766].)

In the case of *Newberry* v. *Evans et al., supra,* the appellate court said: "While, as seen, there is testimony in the present record showing that the damage done to the property of Wilson, for which the judgment in his action against the defendants, awarding him damages, was given, was an incident of an attempt, upon the part of the Drainage District, to take the property for a public use, still there is no evidence herein that the District actually took the property, or is using, or ever used it for its purpose." The appellate court also decided in that case that the Wilson judgment was for damage to the trees standing upon the land, and not for any damage to the land, or for the taking of the land, and that the said directors, while acting as such, committed the trespass, and that the Wilson judgment is a personal judgment against them.

Appellant cites the cases of *Soulard* v. *City of St. Louis,* 36 Mo. 546, and *Hickerson* v. *City of Mexico,* 58 Mo. 61. Both of these cases sustain the proposition that where the owner of land, taken for a public use, sues for and recovers the value of the land so taken, it amounts to a ratification of the taking. Where land is wrongfully taken for a public use the owner has several remedies which he may pursue; he may bring an action in ejectment, may proceed by injunction, or may resort to the common-law action of trespass. (10 Cal. Jur. 443.) In the latter proceeding, if he sues for and recovers judgment for the value of the land taken, he thereby ratifies the wrongful taking. Article I, section 14, constitution of 1879, provides that "Private property shall not be taken or damaged for public use without just compensation having been first made or paid into court." No condemnation proceedings were ever had against the Wilson land, nor has he ever received, by judgment or otherwise, just or any compensation for his land. The drainage district has therefore acquired no right to the use of his land for drainage purposes.

▆▆ Appellant raises the point that respondent cannot maintain this action as a taxpayer in the absence of a demand upon the directors to bring the action. We are of the opinion that obviously such demand would have been unavailing, and, such being the case, a demand was unnecessary. (*Osborne* v. *Stone,* 170 Cal. 480 [150 Pac. 367];

*Mock* v. *City of Santa Rosa,* 126 Cal. 330 [58 Pac. 826]; *Wickersham* v. *Crittenden,* 93 Cal. 17 [28 Pac. 788].)

Appellant also claims that director Bacon should have been made a party to this action. There is no evidence that Bacon participated in any way in the misappropriation of the funds of the district. Under these conditions it was not necessary to make Bacon a party defendant.

We are of the opinion that the trial court acted correctly in allowing interest on each item from the date it was drawn by the directors from the funds of said district. Section 3287 of the Civil Code provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ." The right of the district to the various sums wrongfully withdrawn by appellants, accrued upon the date of each of said withdrawals.

We are of the opinion that the evidence supports the findings of the trial court, but that the judgment against Morken should be credited with the sum of six dollars.

Judgment against appellants is affirmed as so modified. Respondent to have his costs on this appeal.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 23, 1929.