[No. C000017. Third Dist. Oct. 8, 1987.]

DOUGLAS R. WHITE, an Incompetent Person, etc., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

A. Lee Sanders for Plaintiff and Appellant.

David W. Girard and Girard & Griffin for Defendants and Respondents.

OPINION

SIMS, J.—Plaintiff Douglas R. White appeals from a judgment entered after the trial court sustained defendants' demurrer to plaintiff's second amended complaint without leave to amend. Plaintiff, a developmentally disabled (handicapped) person residing in Stockton State Hospital, claims defendants wrongfully failed to spend money received by the state under the federal Education of the Handicapped Act (20 U.S.C. § 1400 et seq.)[1] (hereafter EHA) on handicapped children in state hospitals. As a consequence, the class of eligible children in state hospitals has been and will be denied the free appropriate public education due it under the EHA.

Plaintiff's complaint alleged various theories upon which he and his class were entitled either to money damages or to an order compelling defendants to spend EHA funds for their education.

We conclude plaintiff and his class are not entitled to money damages for any past denial of a free appropriate public education. We further conclude plaintiff and his class cannot pursue a lawsuit to compel the expenditure of current EHA funds for their benefit without first exhausting an available administrative procedure. However, we also conclude plaintiff and his class are entitled to be provided with compensatory educational services to remedy any past denial of services for which they were eligible. Since there is no available administrative remedy to adjudicate the past class-wide, systemic exclusion from the EHA alleged by plaintiff on behalf of his class, plaintiff is not barred from pursuing this action to obtain an adjudication of the entitlement of eligible children in state hospitals to compensatory educational services. In the event plaintiff prevails on his claim, proving a systemic exclusion of handicapped children from EHA services to which they were entitled, any disputes about the compensatory services due each child should be initially resolved through an available administrative procedure under the supervision of the court.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 1983, plaintiff filed his second amended complaint alleging six counts purporting to state separate causes of action The facts alleged in the complaint, which we accept as true (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660]), are as follows: Plaintiff is a developmentally disabled person

---

[1] All statutory references are to title 20 of the United States Code unless otherwise indicated.

who has been diagnosed as mentally retarded, autistic, cerebrally palsied and ataxic since the age of two years.

Between 1977 and 1981, defendant State of California applied for and received federal funds to provide a free appropriate education to handicapped children as mandated by the EHA. These funds were allocated by defendants to public educational institutions and systems in California for the benefit of handicapped children. However, between 1977 and 1981, defendants allocated no EHA funds to the education of eligible students in the California state hospital system which includes Stockton State Hospital in which plaintiff resides.

Plaintiff alleged that the failure to allocate EHA funds for the education of children in state hospitals deprived him, and those similarly situated, of their "liberty interest" in a free appropriate public education in violation of the due process clauses of the state and federal Constitutions. Plaintiff's first count sought at least $20 million in damages and attorney's fees under the federal Civil Rights Act (42 U.S.C. §§ 1983-1988) (hereafter section 1983 or 1988) for violations of the EHA and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) (hereafter Rehabilitation Act).

Plaintiff's second count also sought damages under the Civil Rights Act. It realleged the provisions of the first count and alleged that defendants' acts restricting his free appropriate public education in turn impaired his ability to care for himself and live free from restraint [presumably the restraints of life in state hospitals], all in violation of interests allegedly protected by the due process clause of the Fourteenth Amendment.

Plaintiff's third count sought specific performance. It alleged defendants entered into a series of annual contracts with the federal government between 1978 and the present to provide plaintiff and his class a free appropriate public education, "but defendants did fail to allocate any monies received as a result of said agreement for the purpose of providing a free appropriate education to plaintiff, and all other persons similarly situated, who were residents at state hospitals . . . from 1978 until the present." Plaintiff, as a third party beneficiary, sought to compel defendants to allocate EHA funds received pursuant to the contracts for the benefit of handicapped children in state hospitals.

Plaintiff's fourth count realleged the pertinent provisions of the first and third counts and sought $20 million in damages for breach of contract. Plaintiff did not allege he complied with the Tort Claims Act (Gov. Code, § 905.2) by timely filing a claim with the State Board of Control.

Plaintiff's fifth count sought to impose a constructive trust on the moneys plaintiff alleges should have been spent on him and on members of his class. It alleged that defendants, as public entities and officials, owed plaintiff a fiduciary duty with regard to distribution of federal funds and failed to take all necessary and reasonable actions to assure that the funds would be used for plaintiff's benefit, so as to provide him a free appropriate public education.

Plaintiff's sixth count sought an accounting of all federal EHA funds received by defendants.

Plaintiff did not attempt to exhaust any administrative remedies.

Defendants filed a demurrer to plaintiff's complaint alleging, among other things, that there existed administrative remedies that plaintiff had failed to exhaust. The trial court sustained the demurrer without leave to amend, noting in its ruling "the [EHA] has procedures and remedies which must be exhausted."

## DISCUSSION

## I

### First Count

A. *An overview of the EHA.*

Plaintiff has attempted to state claims under section 1983 and the Rehabilitation Act in addition to the EHA. However, since the EHA is at the center of plaintiff's universe of claims, plaintiff's contentions are best understood by beginning with an overview of the EHA furnished by the United States Supreme Court.

"Congress stated the purpose of the [EHA] in these words: '[T]o assure that all handicapped children have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of handicapped children and their parents or guardians are protected.' 20 U.S.C. § 1400(c).

"The [EHA] defines a 'free appropriate public education' to mean 'special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an

appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with [an] individualized educational program.' 20 U.S.C. § 1401(18).

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"The *modus operandi* of the [EHA] is the . . . 'individualized educational program [IEP].' The IEP is in brief a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs. § 1401(19). The IEP is to be developed jointly by a school official qualified in special education, a child's teacher, the parents or guardian, and, where appropriate, the child. In several places, the [EHA] emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness. See §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), and 1415(b)(2); 34 CFR § 300.345 (1984)." (*Burlington School Comm.* v. *Mass. Dept. of Ed.* (1985) 471 U.S. 359, 367-368 [85 L.Ed.2d 385, 393-394, 105 S.Ct. 1996].)

"The [EHA] provides federal money to assist state and local agencies in educating handicapped children, and conditions such funding upon a State's compliance with extensive goals and procedures. The [EHA] represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to "drop out." ' HR Rep No. 94-332, p 2 (1975)(HR Rep). . . . [¶] In order to qualify for federal financial assistance under the [EHA], a State must demonstrate that it 'has in effect a policy that assures all handicapped children the right to a free appropriate public education.' 20 USC § 1412(1) [20 USCS § 1412(1)]. That policy must be reflected in a state plan submitted to and approved by the Secretary of Education, § 1413, which describes in detail the goals, programs, and timetables under which the State intends to educate handicapped children within its borders. §§ 1412, 1413. . . . The [EHA] broadly defines 'handicapped children' to include 'mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, [and] other health impaired children, [and] children with specific learning disabilities.' § 1401(1).

". . . [T]he [EHA] imposes extensive procedural requirements upon States receiving federal funds under its provisions. Parents or guardians of handicapped children must be notified of any proposed change in 'the identification, evaluation, or educational placement of the child or the provision

of a free appropriate public education to such child,' and must be permitted to bring a complaint about 'any matter relating to' such evaluation and education. §§ 1415(b)(1)(D) and (E). Complaints brought by parents or guardians must be resolved at 'an impartial due process hearing,' and appeal to the state educational agency must be provided if the initial hearing is held at the local or regional level. §§ 1415(b)(2) and (c). Thereafter, '[a]ny party aggrieved by the findings and decision' of the state administrative hearing has 'the right to bring a civil action with respect to the complaint . . . in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.' § 1415(e)(2)." (*Hendrick Hudson Dist. Bd. of Ed.* v. *Rowley* (1982) 458 U.S. 176, 179-183 [73 L.Ed.2d 690, 695-697, 102 S.Ct. 3034], fns. omitted; see *Irving Independent School Dist.* v. *Tatro* (1984) 468 U.S. 883 [82 L.Ed.2d 664, 669-670, 104 S.Ct. 3371].)

The EHA payment system is set out in sections 1411 and 1414. Section 1411(d) provides that from the total of federal funds available, "each local educational agency or intermediate educational unit shall be entitled to an amount [proportioned to] the number of handicapped children aged three to twenty-one, . . . receiving special education and related services in such local educational agency . . . ."[2] "Special education" is defined as "specially designed instruction . . . *including . . . instruction in hospitals and institutions.*" (§ 1401(16), italics added.)

Section 1414 provides a means of reallocating EHA funds. Subsection (d) of that section provides that whenever a local educational agency is unable or unwilling to provide the required services or has handicapped children best served by a regional or state center, the "State educational agency shall use the payments which would have been available to such local educational agency to provide" the appropriate services. Subsection (e) of section 1414 provides that the state "may reallocate funds . . . made available to [a 'local educational agency']" only when the state "determines that [it] is adequately providing a free appropriate public education to all handicapped children residing in the area served by such agency with State and local funds otherwise available to such agency . . . ."

---

[2] "Education Act funds are allocated on a per child served basis. Each state receives a certain percentage of the nationwide cost to educate a student in a public elementary or secondary school multiplied by the number of handicapped students, ages three to twenty-one, that are served in the state. . . . The Act requires that 75% of these funds be treated as entitlement funds. Entitlement funds are passed on by the state in proportional allocations to the local and regional public schools and state agencies serving the children counted. A state may treat the other 25% as discretionary funds. Five percent or $300,000 may be used for administration expenses; the remainder must be used for support and direct services. 20 U.S.C. § 1411(c) and (d)." (*St. Louis Dev. Dis. Treatment Center* v. *Mallory* (W.D.Mo. 1984) 591 F.Supp. 1416, 1423, fn. 21.)

California has elected to participate in the federal EHA program and has enacted a comprehensive set of laws governing special education. (Ed. Code, § 56000 et seq.; see *Byrnes* v. *Riles* (1984) 157 Cal.App.3d 1170 [204 Cal.Rptr. 100]; *Nevada County Office of Education* v. *Riles* (1983) 149 Cal.App.3d 767 [197 Cal.Rptr. 152]; *Newport-Mesa Unified School Dist.* v. *Hubert* (1982) 132 Cal.App.3d 724 [183 Cal.Rptr. 334]; *San Francisco Unified School Dist.* v. *State of California* (1982) 131 Cal.App.3d 54 [182 Cal.Rptr. 525].) California's implementing statutes (Ed. Code, § 56000 et seq.) include provisions containing the EHA's procedural safeguards. (§ 1415; Ed. Code, §§ 56500-56507.) The Education Code's procedural safeguards are implemented in title 5 of the California Administrative Code, section 3081, which provides for notice and a hearing by an independent hearing officer.

**B.** *Plaintiff may use section 1983 to obtain an adjudication that the federal statutory rights of the class were violated.*

Plaintiff's first count seeks at least $20 million in damages under section 1983 for alleged violations of the EHA and the Rehabilitation Act.[3] These statutory violations allegedly deprived plaintiff and his class of their constitutionally protected liberty interest in a free appropriate public education.

Plaintiff has plainly pleaded a wrong done by defendants to him and his class, since "the [EHA] establishes an enforceable substantive right to a free appropriate public education. [Citations.]" (*Smith* v. *Robinson* (1984) 468 U.S. 992, 1010 [82 L.Ed.2d 746, 764, 104 S.Ct. 3457].) Moreover, the pleadings are sufficient to allege the systemic denial of a free appropriate public education between 1977 and 1981 was caused by the illegal allocation of EHA funds in violation of sections 1411 and/or 1414. Thus, the questions at hand are whether plaintiff can pursue this action under section 1983 or whether he must assert his claims exclusively under the EHA, and whether damages are an appropriate remedy for the pleaded wrongs.

---

[3] The state courts of California have accepted concurrent jurisdiction with the federal courts to adjudicate suits brought under section 1983. (*Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 560 [195 Cal.Rptr. 268].) Since defendants have not contested our jurisdiction to adjudicate claims based on the Rehabilitation Act, we assume without deciding that this court has concurrent jurisdiction with the federal courts to address plaintiff's Rehabilitation Act claim.

1. *Smith* v. *Robinson, supra, 468 U.S. 992 [82 L.Ed.2d 746], precludes resort to section 1983 if plaintiff and his class have a remedy under the EHA.*

Section 1983 provides in relevant part that "Every person who, under color of [state law] subjects . . . any . . . person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution *and laws,* shall be liable to the party injured . . . ." (Italics added.)

In *Maine* v. *Thiboutot* (1980) 448 U.S. 1 [65 L.Ed.2d 555, 100 S.Ct. 2802] respondents brought an action under section 1983 claiming they had been denied monetary welfare benefits to which they were entitled under a statute comprising a part of the federal Social Security Act. The court concluded the "plain language" of section 1983, referring to "laws," entitled respondents to relief under section 1983 for a violation of federal statutory law. (*Id.,* at pp. 4-5 [65 L.Ed.2d at pp. 559-560].)

Plaintiff contends *Maine* entitles him and his class to pursue the present action under section 1983 for damages premised on defendants' failure to appropriate EHA funds to be used for their education in violation of the EHA.

However, the section 1983 remedy approved in *Maine* has been subject to subsequent judicial narrowing. (See *Wright* v. *Roanoke Redev. & Housing Auth.* (1987) 479 U.S. 418, 423 [93 L.Ed.2d 781, 788, 107 S.Ct. 766].) Thus, for example, section 1983 is not available to redress a federal statutory violation where a federal statutory scheme provides a judicial remedy leaving "no room for additional private remedies under § 1983." (*Id.,* at p. 423 [93 L.Ed.2d at p. 788; see *Middlesex Cty. Sewerage Auth.* v. *Sea Clammers* (1981) 453 U.S. 1 [69 L.Ed.2d 435, 101 S.Ct. 2615].)

In *Smith* v. *Robinson, supra,* 468 U.S. 992 [82 L.Ed.2d 746], the Supreme Court considered the interrelationship of section 1983, the Rehabilitation Act, and the EHA. The petitioners, a handicapped child and his parents, alleged members of a local school committee had wrongfully refused to pay the costs for special education for the child. The petitioners asserted claims under the EHA and the Rehabilitation Act as well as section 1983 claims premised on constitutional deprivations of due process and equal protection. (468 U.S. at p. 1000 [82 L.Ed.2d at p. 757].) The petitioners' constitutional claims were virtually identical to their EHA claims. (*Id.,* at p. 1009 [82 L.Ed.2d at p. 763].) The court was thus confronted with the question, "whether Congress intended that the EHA be the exclusive avenue through which a plaintiff may assert those claims." (*Ibid.*)

The court concluded "The EHA is a comprehensive scheme set up by Congress to aid the States in complying with their constitutional obligations to provide public education for handicapped children. Both the provisions of the statute and its legislative history indicate that Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those claims through the carefully tailored administrative and judicial mechanism set out in the state [*sic*]."[4] (*Ibid.*)

The court reasoned, "In light of the comprehensive nature of the procedures and guarantees set out in the EHA and Congress' express efforts to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child, we find it difficult to believe that Congress also meant to leave undisturbed the ability of a handicapped child to go directly to court with an equal protection claim to a free appropriate public education. Not only would such a result render superfluous most of the detailed procedural protections outlined in the statute, but, more important, it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." (*Id.,* at pp. 1011-1012, fn. omitted [82 L.Ed.2d at pp. 764-765].) *Smith* concluded neither section 1983 nor the Rehabilitation Act was available to vindicate plaintiff's EHA claims. (*Id.,* at pp. 1009, 1016 [82 L.Ed.2d at pp. 763, 767-768].)

2. *The EHA affords no procedure to adjudicate plaintiff's claim of unlawful class exclusion from the EHA.*

Does *Smith* v. *Robinson* require plaintiff to proceed exclusively under the EHA and to exhaust the section 1415 administative procedure before pursuing this action? We think a later case, *Wright* v. *Roanoke Redev. & Housing Auth., supra,* 479 U.S. at p. 423 [93 L.Ed.2d at p. 788] compels the conclusion plaintiff can use section 1983 to obtain an adjudication that plaintiff and his class were unlawfully excluded from receipt of EHA services in years past.

In *Wright,* the court considered whether tenants could pursue a class action under section 1983 against a local housing authority that had violated federal law imposing ceilings on rents. The court noted it could not lightly conclude Congress intended to preclude reliance on section 1983 as a remedy for deprivation of a federal statutory right. (*Wright, supra,* 479 U.S. at pp. 423, 427 [93 L.Ed.2d at pp. 788, 791].)

---

[4] We believe the reference to "state" is a typographical error and should read "statute."

The court concluded the statutory scheme evidenced no intent by Congress to preclude a section 1983 claim. (*Id.,* at p. 429 [93 L.Ed.2d at p. 792].) Addressing the availability of an administrative remedy required by statute (42 U.S.C. § 1437d(k); 24 C.F.R. § 966.51(b)), the court twice noted the remedy made no provision for class relief. (*Id.,* at pp. 426, 427 [93 L.Ed.2d at pp. 790, 791].)

To be sure, *Wright* remarked that the EHA "statutes . . . themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." (479 U.S. at p. 427 [93 L.Ed.2d at p. 791].) However, that remark must be read along with *Wright's* characterization of *Smith* v. *Robinson* as a case that "held that allowing a plaintiff to circumvent the Education of the Handicapped Act's administrative remedies would be inconsistent with Congress' carefully tailored scheme, which itself allowed private parties to seek remedies for violating federal law." (*Id.,* at p. 423 [93 L.Ed.2d at p. 788].) Of course, as *Wright* itself holds, we cannot infer that Congress intended to make citizens resort to an administrative procedure—to the exclusion of section 1983—where the administrative procedure fails to supply a remedy. *Smith* v. *Robinson* itself acknowledged that limitation, strictly holding "that *where the EHA is available* to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim." (*Id.,* 468 U.S. at p. 1013 [82 L.Ed.2d at p. 766], italics added.)

These inferences of congressional intent are consistent with the established rule placing limitations on the requirement of exhaustion of administrative remedies. ■ "It is settled that the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable [citation] or inadequate [citation]." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317].) A corollary of this rule excuses resort to an administrative procedure where class relief is sought and the administrative procedure affords no remedy for the class. (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 690-691 [94 Cal.Rptr. 421, 484 P.2d 93]; *Rose* v. *City of Hayward* (1981) 126 Cal.App.3d 926, 935 [179 Cal.Rptr. 287]; see *Lowry* v. *Obledo* (1980) 111 Cal.App.3d 14, 25 [169 Cal.Rptr. 732].)

■ The EHA contains no administrative procedure by which plaintiff can obtain an adjudication that his class was systemically excluded from EHA entitlements.

The EHA "makes no specific provision for the bringing of class actions." (Note, *Enforcing the Right to an "Appropriate" Education: The Education*

*for All Handicapped Children Act of 1975* (1979) 92 Harv.L.Rev. 1103, 1113; Annot., Exhaustion of State Administrative Remedies Under § 615 of the Education for All Handicapped Children Act (20 USCS § 1415) (1983) 62 A.L.R. Fed. 376.) Thus, for example, the fair hearing procedures set forth in section 1415(b) uniformly permit use by the parents or guardians of "*the* child" or "*such* child." (Italics added.) Education Code section 56501, subdivision (a), provides in pertinent part that, "The due process hearing procedures prescribed by this chapter extend to *the* pupil, *the* parent, and the public education agency involved . . . ." (Italics added.) The hearing procedures in section 3081 of title 5 of the California Administrative Code are described in subdivision (a) of section 3080 of that code as applicable to "*a* parent" and "*the* pupil."

The EHA administrative procedures are not designed to process claims of systemic unlawful funding abuses. (See *Medley* v. *Ginsberg* (S.D.W.Va. 1980) 492 F.Supp. 1294, 1309.) Indeed, addressing California's EHA administrative remedy provided in Education Code section 56500, this court noted in *Nevada County Office of Education* v. *Riles* (1983) 149 Cal.App.3d 767 [197 Cal.Rptr. 152]: "Larger systemic issues, such as which government agency should provide or pay for the . . . services needed, involve only tangentially the parent and pupil, and would clearly expand the scope of the administrative hearing beyond that contemplated in Education Code section 56500 et seq." (Pp. 776-777, fn. omitted.)

Since the EHA administrative procedures make no provision to adjudicate the systemic grievance plaintiff has alleged, we shall not infer that Congress intended to preclude resort to section 1983 to obtain the sought-after adjudication. (*Wright* v. *Roanoke Redev. & Housing Auth., supra,* 479 U.S. at pp. 428, 429 [93 L.Ed.2d at pp. 791-792]; see *Lowry* v. *Obledo, supra,* 111 Cal.App.3d at pp. 24-25; see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 238, pp. 269-271.) A contrary conclusion would mean that every hospitalized handicapped child would have to initiate and pursue his or her own claim through the administrative procedure in order to show an entitlement to EHA services from which the class was unlawfully excluded. While we shall later conclude individual administrative appeals would be appropriate when initiated and supervised by order of court, we cannot believe Congress intended to place the burden on handicapped children or their parents to initiate separate administrative claims in the circumstances pleaded here.

3. *Plaintiff's claims to past unlawful exclusion from the EHA are not barred by his failure to exhaust administrative remedies in section 3080 of title 5 of the California Administrative Code.*

■ Defendants contend plaintiff's claims are barred by his failure to exhaust administrative procedures set forth in section 3080 of title 5 of the

California Administrative Code. (All further references to section 3080 are to this regulation.) We shall have more to say about these procedures later. For present purposes, we need note only that the statutory origin of section 3080 is found in section 1221e-3(a)(1), which empowers the Secretary of Education of the United States to promulgate rules and regulations governing the programs administered by the Department of Education. The pertinent federal regulations are set forth in 34 Code of Federal Regulations sections 76.780 through 76.783. Section 76.780 states in relevant part, "(a) A State shall adopt written procedures for—[¶] (1) Receiving and resolving any complaint that the State or a subgrantee is violating a Federal statute or regulations that apply to a program; . . ." Section 76.780 is found in subpart G of part 76 of 34 Code of Federal Regulations. Part 76 is "State-Administered Programs." Subpart G is: "What Are the Administrative Responsibilities of the State and its Subgrantees?" The first regulation in subpart G says, "A State and a subgrantee shall comply with the State plan and applicable statutes, regulations, and approved applications, and shall use Federal funds in accordance with those statutes, regulations, plan, and applications." (34 C.F.R. § 76.700.) Consequently, section 3080 is intended to provide a procedure whereby persons may complain that federal funds are not being used in accordance with the state plan and applicable statutes and regulations. If ultimately sustained at the federal level, enforcement is achieved by issuance of cease and desist orders (34 C.F.R. § 78.34) and by withholding federal funds or certification to the Attorney General (34 C.F.R. § 78.86).

There are two reasons why plaintiff need not exhaust the section 3080 procedure before pursuing his section 1983 action. First, the existence of a state administrative remedy does not ordinarily foreclose resort to section 1983. (*Patsy* v. *Florida Board of Regents* (1982) 457 U.S. 496, 516 [73 L.Ed.2d 172, 187-188, 102 S.Ct. 2557].) The section 3080 procedure constitutes such a state administrative remedy even though it is established pursuant to the authority of a federal statute. (See *Wright* v. *Roanoke Redev. & Housing Auth., supra,* 479 U.S. at p. 427 [93 L.Ed.2d at p. 791].)

Second, exhaustion is not required because the section 3080 procedure provides no effective remedy for *past wrongs* done plaintiff and his class; the withholding of federal funds, for example, does not make plaintiff and his class whole. (See *Kling* v. *County of Los Angeles* (9th Cir. 1980) 633 F.2d 876, 879; *Camenisch* v. *University of Texas* (5th Cir. 1980) 616 F.2d 127, 135.)

We therefore hold plaintiff may pursue his class action under section 1983 to try to prove that he and his class were unlawfully systemically excluded from EHA services between 1977 and 1981.

C. *Should plaintiff prove he and his class were unlawfully excluded from EHA services, they are entitled to compensatory educational services; money damages are unavailable.*

 This leaves the question whether plaintiff and his class are entitled to money damages should they succeed in proving the asserted unlawful exclusion from EHA entitlement. The United States Supreme Court has not decided whether money damages are available under section 1983 for violation of a plaintiff's federal statutory rights. (*Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 270 [69 L.Ed.2d 617, 634, 101 S.Ct. 2748].) For a variety of reasons, we conclude money damages are neither necessary nor appropriate to redress the pleaded wrongs done plaintiff and his class.

1. *Compensatory educational services are available.*

First, we do not think money damages are necessary to compensate plaintiff and his class because the children can be supplied with compensatory EHA services to make them whole. Unlike the Social Security Act at issue in *Maine v. Thiboutot, supra,* 448 U.S. 1, the EHA grants plaintiff no entitlement to any money. Rather, his statutory entitlement is to educational *services* comprising a free appropriate public education. (§ 1412(1); 34 C.F.R. § 300.121(a).) This entitlement exists irrespective of whether the state allocates EHA funds for services to be provided to plaintiff. "The State educational agency, as a recipient of [EHA] funds is responsible for insuring that all public agencies in the State comply with the provisions of the Act, regardless of whether they receive [EHA] funds. If a local educational agency elects not to apply for its [EHA] entitlement, the State would be required to use those funds to insure that a free appropriate public education (FAPE) is made available to children residing in the area served by that local agency. However, if the local entitlement is not sufficient for this purpose, additional State or local funds would have to be expended in order to insure that 'FAPE' and the other requirements of the Act are met." (Com. to 34 C.F.R. § 300.360.) "Each State may use whatever State, local, Federal, and private sources of support are available in the State to meet the requirements of [the EHA]." (34 C.F.R. § 300.301(a); see §§ 1401(18); 1412(2)(B).)

 Since plaintiff and his class have no statutory entitlement to receive any EHA funds, their claim for damages[5] is ultimately premised

---

[5] Plaintiff has never suggested his complaint could be amended to seek other relief, such as mandate, to compel responsible officials somehow to allocate EHA funds already spent between years 1977 and 1981. The burden is on plaintiff to show how he can amend his complaint and how that amendment will change the legal effect of his pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *HFH, Ltd. v. Superior*

on the denial of a free appropriate public education. If the EHA provides a remedy whereby plaintiff and his class can obtain the free appropriate public education due them, then, in our view, they have not been substantially damaged.

■ We see no reason why the EHA cannot provide plaintiff and his class with the free appropriate public education he claims they were denied. The EHA can furnish plaintiff and his class "compensatory educational services," i.e., remedial services to make up for services lost when the state violated its duty to provide a free appropriate education. (See Com., *Compensatory Educational Services and the Education for All Handicapped Children Act* (1984) Wis.L.Rev. 1469.)

Plaintiff was born on March 4, 1960. Plaintiff first filed the complaint on July 21, 1982, after he had turned 22. In order to receive EHA funds, states must provide free appropriate education to handicapped children between the ages of three and twenty-one inclusive.[6] (§ 1412(2)(B); 34 C.F.R. § 300.121(a); Sen. Rep. No. 94-168, p. 16 [paramount goal is to provide free appropriate public education to all handicapped children aged three through twenty-one].) Ordinarily there is no duty under the EHA to furnish a free appropriate public education to a person over age 21. (See, e.g., *Georgia Ass'n of Retarded Citizens* v. *McDaniel* (11th Cir. 1983) 716 F.2d 1565, 1579; *Timms* v. *Metro. Sch. Dist. of Wabash County, Ind.* (7th Cir. 1983) 722 F.2d 1310, 1314.)

However, in *Burlington School Comm.* v. *Mass. Dept. of Ed., supra,* 471 U.S. 359, the Supreme Court held local authorities could be made to reimburse parents for costs of special education, paid by the parents, that should have been furnished under EHA. (471 U.S. at p. 371 [85 L.Ed.2d at p. 396].) The court emphasized the relief was available under the administrative procedures required by the EHA. (*Id.,* at pp. 371, 374 [85 L.Ed.2d at pp. 396, 397-398].) Had plaintiff's parents furnished the special education services he claims he was wrongfully denied between 1977 and 1981, *Burlington* would authorize reimbursement. We cannot believe EHA-eligible children may obtain relief only if their parents have the financial resources to pay initially for services wrongfully denied under the EHA. Rather, we

*Court* (1975) 15 Cal.3d 508, 513, fn.3 [125 Cal.Rptr. 365, 542 P.2d 237]; *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406]; *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081-1082 [235 Cal.Rptr. 844].) Here, in both original and supplemental briefs, plaintiff has consistently pursued a claim seeking the payment of money to him and his class under section 1983.

[6] Provision of the free appropriate public education to persons aged 18-21 inclusive is not required if inconsistent with state law. California does provide for education in that age range (Ed. Code, §§ 56500, 56600, 56700), so entitlement under the EHA continues through age 21 in this state.

conclude plaintiff and his class are entitled to be provided with compensatory educational services, funded by state monies, if necessary, to "compensate" them for any services wrongfully denied him under the EHA. The Eighth Circuit Court of Appeals has also read *Burlington* as requiring that compensatory educational services be furnished to a handicapped child who was entitled to EHA services but is now beyond the age of ordinary entitlement. (*Miener By and Through Miener* v. *State of Mo.* (8th Cir. 1986) 800 F.2d 749, 754.)

Thus, should plaintiff prevail on his claims that he and his class were systemically denied EHA services in years past the trial court should enter a declaratory judgment establishing the entitlement of the class to compensatory EHA services. The trial court can fashion an appropriate method of notifying class members of their entitlement to compensatory services and of insuring that they receive them. Thus, for example, in the event of any dispute as to the nature or extent of compensatory services to be provided any class member, the court can order defendants to resolve the dispute initially using the EHA administrative procedure under the continuing supervision of the court. (See *Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575].)

2. *It would be anomalous to have different remedies for those asserting individual EHA claims and those asserting class claims.*

There are additional reasons why money damages are inappropriate in the pleaded circumstances. ▮ It is well settled that no tort damages are available under the EHA except in circumstances not pleaded here, i.e., where administrators have denied a procedural remedy in bad faith or where a child's physical health has been endangered by denial of services. (See *Department of Educ., State of Haw.* v. *Katherine D.* (9th Cir. 1983) 727 F.2d 809, 820, cert. den. 471 U.S. 1117 [86 L.Ed.2d 260, 105 S.Ct. 2360]; *Timms* v. *Metropolitan Sch. Dist. of Wabash Cty.* (7th Cir. 1983) 718 F.2d 212, 216; *Powell* v. *Defore* (11th Cir. 1983) 699 F.2d 1078, 1081; *Monahan* v. *State of Neb.* (8th Cir. 1982) 687 F.2d 1164, 1169; *Miener* v. *State of Mo.* (8th Cir. 1982) 673 F.2d 969, 979-980; *Anderson* v. *Thompson* (7th Cir. 1981) 658 F.2d 1205, 1208-1211 [63 A.L.R.Fed. 197].)[7] It would be anomalous to have the availability of a damages remedy depend on whether

[7] These authorities indicate no damages are available even where plaintiffs assert that denial of EHA services abridged their constitutional rights, provided the EHA supplies a remedy for the denial. The cases generally reason that, "The EHA is a comprehensive scheme set up by Congress to aid the States in complying with their constitutional obligations to provide public education for handicapped children." (*Smith* v. *Robinson, supra,* 468 U.S. at p. 1009 [82 L.Ed.2d at p. 763].) Here, the fact that plaintiff has pled EHA exclusion resulted in a denial of constitutional rights does not entitle him to damages.

the plaintiffs were members of a class alleging systemic wrongs sufficient to avoid initially the EHA administrative mechanism, thereby entitling them to pursue an action under section 1983.

3. *Money damages are against congressional and public policy.*

Moreover, the avoidance of a damages remedy is consistent with Congress's intent to allow the limited financial resources of states to be spent on the education of handicapped children rather than on damages. (See *Smith* v. *Robinson, supra,* 468 U.S. at p. 1020 [82 L.Ed.2d at p. 770].)

██ Finally, we note that under section 1983, a state officer acting under color of law may be *personally* liable for damages. (*Monroe* v. *Pape* (1961) 365 U.S. 167, 172 [5 L.Ed.2d 492, 497, 81 S.Ct. 473] overruled on other grounds in *Monell* v. *New York City Dept. of Soc. Serv.* (1978) 436 U.S. 658, 701 [56 L.Ed.2d 611, 641-642, 98 S.Ct. 2018].) Putting aside questions of immunity of state officers not addressed by the parties, we doubt whether the wholesale importation of the personal liability doctrine into the arena of state administration of education would have a salutory effect.

4. *Enactment of the Handicapped Children's Protection Act of 1986 does not entitle plaintiff and his class to money damages.*

In 1986 Congress enacted the Handicapped Children's Protection Act of 1986 (Pub.L. No. 99-372, 100 Stats. 796-797, eff. Aug. 5, 1986; hereafter Protection Act) which was intended to overcome much of *Smith* v. *Robinson.* (See 1986 U.S. Code Cong. & Admin. News, pp. 1799-1811.)

In pertinent part, the Protection Act added subsections (e)(4) and (f) to section 1415. Subsection (e)(4) authorizes reasonable attorney's fee awards under the EHA, thus eliminating one major disparity between the EHA on the one hand, and section 1983 and the Rehabilitation Act on the other.[8] Subsection (f) addressed the key issue considered by the court in *Smith*: the EHA's effect on other laws. Subsection (f) provides: "Nothing in this title shall he construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.S. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this

---

[8] In *Smith* the court's conclusion the EHA remedy was exclusive precluded a fee award under sections 1983 and 1988. (468 U.S. at pp. 994, 1021 [82 L.Ed.2d at pp. 754, 770-771].)

part." Subsections (b)(2) and (c) refer to the due process hearing procedures available at the local and state levels.

In an uncodified section 5, the Protection Act provides: "The amendment made by section 2 [adding subsection (e)(4), related to attorneys fees but *not* subsection (f) related to other remedies] shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act [§ 1415(e)] after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984." (Pub.L. No. 99-372, 100 Stat. 797.)

 In a supplemental brief plaintiff contends his claims for money damages, premised on section 1983 and the Rehabilitation Act, are expressly authorized by subsection (f) of section 1415, added by the Protection Act. However, for reasons explained at length in *Silanc* v. *Tirozzi* (D.Conn. 1987) 651 F.Supp. 1021 at pages 1024-1026, which we need not replicate here, we conclude subsection (f) of section 1415 does not apply retroactively to claims, such as plaintiff's, that arose between 1977 and 1981, before the effective date of the Protection Act: August 5, 1986.[9]

For these reasons then, we conclude that plaintiff and his class can use section 1983 to prove the pleaded deprivation of EHA entitlement. However, should they succeed, their remedy is compensatory educational services under the EHA, not money damages. Although a demurrer was properly sustained as to plaintiff's first count for damages, it is a "well accepted principle that against a *general* demurrer the only requirement is that upon a consideration of all the facts stated it must appear plaintiff is entitled to some relief, notwithstanding that . . . plaintiff may demand relief to which he is not entitled under the facts alleged. [Citation.]" (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 123 [109 Cal.Rptr. 799, 514 P.2d 111], italics added.) Since plaintiff and his class were entitled to some relief, the general demurrer to the first count was erroneously sustained.

## II

### *Second Count*

Plaintiff's second count differs from his first only as to the alleged consequences of defendants' alleged violation: whereas in the first count

---

[9] Except for his claims that the Protection Act of 1986 allows him to pursue a claim for damages under the Rehabilitation Act, which we reject, plaintiff has not addressed his entitlement to proceed under that act. We shall not undertake that adventure on our own motion. In the trial court, plaintiff shall proceed exclusively under section 1983.

defendants denied plaintiff his liberty interest in a free appropriate public education, in the second count the lack of education *in turn* deprived plaintiff of another asserted liberty interest, that of being able to care for himself and to live free of the restraints of state hospitals.

We perceive no material difference between the first and second counts; our prior discussion therefore applies to this count as well. The general demurrer to this count was erroneously sustained.

### III

*Third Count*

*Plaintiff Cannot Pursue His Third Count for Specific Performance Until He Has Exhausted His Administrative Remedy Under Section 3080*

 Plaintiff's third count seeks a decree of specific performance commanding defendants to perform their obligations under their EHA "contracts" with the federal government. Plaintiff, as a third party beneficiary, wants defendants ordered to allocate a portion of their EHA funds to a specific use: providing a free appropriate public education to handicapped children in state hospitals. Plaintiff again seeks this relief for himself and for his class. Plaintiff attached to his complaint, as an example of the contracts in question, the fiscal year 1978 plan submitted by the state to the federal government as required by sections 1412 and 1413.[10] Defendants do not dispute that the plan is a contract between the federal government and the state. (See *Bossier Parish School Board* v. *Lemon* (5th Cir. 1967) 370 F.2d 847.) The plan does not allocate any EHA funds to state hospitals.[11]

---

[10] The attachment was incomplete. However, prior to the ruling on demurrer, plaintiff provided the trial court with a complete 1978 plan. Since no objection to consideration of the complete plan was made in the trial court or here, we shall consider it as a true copy of the plan as agreed by the parties. Moreover, although the complaint pleads that other fiscal year plans are "comparable," the complaint does not plead that any relevant contractual obligations under any other plans are different from those in the 1978 plan. Accordingly, we construe the pleading as premised on contractual duties set forth in the 1978 plan.

[11] This does not necessarily mean public funds were not provided. As we have noted, state and local funds may be used to provide a free appropriate public education. Moreover, the plan itself recognizes that funds from other federal programs may be used: "Funds received by the State or any of its political subdivisions under any other Federal program, including Section 121 of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 241e-2), Section 305(b)(8) of that Act (20 U.S.C. 844a(b)(8) or its successor authority, and Section 122(a)(4)(B) of the Vocational Education Act of 1963 (20 U.S.C. 1262(a)(4)(B), under which there is specific authority for assistance for the education of handicapped children, will be used by the State or any of its political subdivisions, only in a manner consistent with the goal of providing free appropriate public education for all handicapped children, except that noth-

Plaintiff relies particularly on the following language in the 1978 plan as the basis of defendants' contractual duty: "The State Educational Agency is responsible for assuring that the requirements of [the EHA] are carried out and that each educational program for handicapped children administered within the State, including all programs administered by any other State or local agency, is under the general supervision of the State Education Agency persons responsible for educational programs for handicapped children . . . ."

Plaintiff has made no argument nor cited authority supporting the view that defendant may somehow be ordered to allocate EHA funds already spent in years past. To the extent plaintiff and his class were systemically denied their EHA entitlement to services in years past, they may proceed under the first count, with an amendment of the complaint to encompass later years if appropriate. Here, we assume the assertion is that defendants are currently unlawfully refusing to allocate available EHA funds to children in state hospitals.

For present purposes we shall assume plaintiff has standing as a third party beneficiary to compel defendants to comply with their contractual duty to spend EHA funds in accordance with the law. (See *Zigas* v. *Superior Court* (1981) 120 Cal.App.3d 827, 838 [174 Cal.Rptr. 806]; compare *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 401 [113 Cal.Rptr. 585, 521 P.2d 841]; *Dateline Builders, Inc.* v. *City of Santa Rosa* (1983) 146 Cal.App.3d 520, 527 [194 Cal.Rptr. 258].) *However, in this instance, plaintiff has gone to court prematurely before exhausting an available administrative remedy.*

We recently had occasion to remark, "The doctrine of exhaustion of administrative remedies, it has been held, is not a matter of judicial discretion but is a fundamental rule of procedure. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].) 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' (*Id.,* at p. 292.) When no exception applies, the exhaustion of an administrative remedy is a jurisdictional prerequisite to resort to the courts. (*Id.,* at p. 293.)" (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750].)

The doctrine of exhaustion of administrative remedies has been applied to bar judicial relief premised on contractual rights where an unexhausted

ing in this section will limit the specific requirements of the laws governing those Federal programs."

474

governmental administrative remedy would resolve the contractual dispute.[12] (See, e.g., *McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1239 [231 Cal.Rptr. 304] [statutory administrative remedy existed to resolve contract dispute between olive producer and olive processor]; *Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1242 [230 Cal.Rptr. 382] [dispute under franchise contract subject to resolution by New Motor Vehicle Board]; *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 313 [159 Cal.Rptr. 416] [dispute over insurance contract subject to administrative remedy before Department of Insurance]; *Hayward* v. *Henderson* (1979) 88 Cal.App.3d 64, 69-70 [151 Cal.Rptr. 505] [employee claiming rights under rules of federal Comprehensive Employment Training Act (CETA) Program required to exhaust available administrative remedies under CETA].)

 Here, defendants argue, plaintiff's claim that California's annual plans require the expenditure of EHA funds on children in state hospitals is subject to administrative resolution pursuant to procedures set forth in section 3080, the origin of which we have discussed. We agree.

Subdivision (a) of section 3080 provides in pertinent part: "This section applies to the filing of a complaint, in accordance with provisions of Title 34, Code of Federal Regulations, Section 76.780-783, regarding a public education agency's alleged violation of federal or state law or regulation relating to the provision of a free appropriate public education."

Section 3080 is designed to process precisely the sort of complaint plaintiff has pleaded in this count—that the state is using federal EHA funds in violation of a federal statute.[13] (See 34 C.F.R. § 76.700.)

---

[12] A variation of the doctrine also applies in some circumstances where a contract provides for a private dispute-resolution mechanism. (See, e.g., *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 474-476 [131 Cal.Rptr. 90, 551 P.2d 410]; *Holderby* v. *Internat. Union etc., Engrs.* (1955) 45 Cal.2d 843, 846 [291 P.2d 463].) Here, the plan at issue expressly requires establishment of administrative remedies in title 5 of the California Administrative Code. However, since we conclude the existence of the governmental administrative remedy compels its exhaustion, we need not reach the question whether exhaustion is also required by the contract.

[13] The section 3080 complaint procedure is as follows: A complaint against the State Department of Education can be filed with the State Superintendent of Public Instruction. (§ 3080, subd. (m).) The complaint mandates the direct intervention of the State Department of Education. (*Id.*, subd. (d)(5).)

Procedures set forth in subdivisions (h)(2) and (i)(2) are then followed. (*Ibid.*) Subdivision (h)(2) provides: "Any appropriate actions necessary to investigate the complaint may be taken, including telephone calls and/or on-site visits. At any point in the review either party may submit additional information related to the complaint. As part of the investigation, the complainant shall be provided with an opportunity to respond to information obtained from the public education agency." Subdivision (i)(2) provides in pertinent part: ". . . the complaint shall be investigated and a written report including findings, conclusions, rationale for conclusions, and corrective action, if necessary, shall be completed within thirty (30) days of

We see no reason why the section 3080 procedure would not allow the Superintendent and the State Board of Education to remedy any present unlawful denial of EHA funds to agencies responsible for providing a free appropriate education to plaintiff and his class.[14]

However, plaintiff contends that, even if resort to section 3080 is normally required as a prerequisite to obtaining judicial relief, that requirement is excused in the present case on the basis of futility.[15] (See generally, *Riley* v. *Ambach* (2d Cir. 1981) 668 F.2d 635, 640-641, followed in *Jose P.* v. *Ambach* (2d Cir. 1982) 669 F.2d 865, 869.)

Plaintiff alleged in his complaint that "it would have been futile to seek [administrative] relief as a result of the failure of Area VI Developmental Disabilities Board, an agency of the State of California, to obtain *comparable, but not identical, relief* in the matter styled *Area VI Developmental Disabilities Board* v. *Wilson C. Riles, et al. . . .*" (Italics added.) This allegation of futility is insufficient as a matter of law.

Futility is a narrow exception to the general rule requiring a plaintiff to exhaust his administrative remedies. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 418 [194 Cal.Rptr. 357, 668 P.2d 664]; *County of Contra Costa* v. *State of California, supra,* 177 Cal.App.3d at p. 77; *Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844]; see *Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 520 [205 Cal.Rptr. 6].) In *Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314 [109 P.2d 932] our Supreme Court long ago explained that exhaustion of administrative remedies is required unless the petitioner can positively state that the administrative body *has declared what its ruling will be in the particular case.* (P. 318; see *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654, 662 [221 Cal.Rptr. 488, 710 P.2d 288]; *Sea & Sage, supra,* 34 Cal.3d at p. 418; *County of Contra Costa, supra,* 177 Cal.App.3d at p. 78; *Edgren, supra,* 158 Cal.App.3d at pp. 520-521; *Doyle, supra,* 117 Cal.App.3d at

---

receipt of the complaint. This report shall be in English, and when necessary, in the primary language or mode of communication of the complainant, and shall include a notice of the complainant's right to request a review of the State Department of Education's decision by the federal Education Department pursuant to Title 34, Code of Federal Regulations, Section 76.781(c)."

At the state level, resolution of the complaint is accomplished by designating corrective action in a compliance report. (*Id.,* subd. (j)(2).) Failing compliance, the superintendent and the State Board of Education are empowered to proceed in superior court to compel compliance. (*Id.,* subd. (j)(4).)

[14] Plaintiff conceded at oral argument that the Superintendent of Public Instruction was empowered to grant the relief plaintiff seeks.

[15] The argument is one of futility. Plaintiff has never tendered a due process challenge to section 3080; we therefore do not consider the question. (See *California Assn. of Dispensing Opticians* v. *Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 430 [191 Cal.Rptr. 762].)

p. 683.) Plaintiff's allegation that the Developmental Disabilities Board was unable to obtain "comparable, but not identical" relief in a different case is not the unequivocal declaration contemplated by these cases.

Plaintiff also contends it would have been futile to seek relief from the Superintendent of Public Instruction because the superintendent would be the ultimate decisionmaker in any administrative proceeding and would be reluctant to upset his own decision. In support of this contention, plaintiff cites authority holding that a demand need not be made on public officials before suit is filed to redress breach of a duty imposed by law.[16] (See *Briare* v. *Matthews* (1927) 202 Cal. 1, 8-9 [258 P. 939]; *Osburn* v. *Stone* (1915) 170 Cal. 480, 483 [150 P. 367]; *Mock* v. *City of Santa Rosa* (1899) 126 Cal. 330, 342 [58 P. 826]; *Wool* v. *Scott* (1956) 140 Cal.App.2d 835, 846 [296 P.2d 17]; *Citizens' etc. Pensions* v. *Bd. of Supervisors* (1949) 91 Cal.App.2d 658, 660 [205 P.2d 761]; *Newberry* v. *Evans* (1929) 97 Cal.App. 120, 125 [275 P. 465].)

Putting aside the question whether under section 3080 the superintendent is the final decisionmaker in light of the roles of the Board of Education and the federal Education Department, it appears plaintiff has overlooked a crucial distinction between a mere demand for compliance and the administrative remedy at issue here. Unlike a mere demand, the procedure under section 3080 contemplates that a complainant will supply information in support of his claim; the procedure includes a right to respond to information from the agency and features an investigation and report. (See fn. 13, *ante*.) The available administrative remedy therefore allows plaintiff the opportunity to inform the superintendent fully of the basis of his claim of illegality and requires a response.[17] We will not assume the superintendent would persist in any illegality shown to exist.[18] Moreover, should an unlawful allocation of contract funds be shown a lawful allocation would provide a remedy for plaintiff's class. In these circumstances, it is simply not futile to require plaintiff to pursue his contract claim to resolution under section 3080. (Cf. *Sessions* v. *Livingston Parish School Bd.* (M.D.La. 1980) 501 F.Supp. 251, 254 [62 A.L.R.Fed. 369]; cf. *Wilson* v. *Marana Unified Sch. Dist. of Pima County* (9th Cir. 1984) 735 F.2d 1178, 1181 [rehg. by state

[16] Plaintiff also cites *Loughran* v. *Flanders* (D.Conn. 1979) 470 F.Supp. 110 and *Fialkowski* v. *Shapp* (E.D.Pa. 1975) 405 F.Supp. 946. *Loughran* contains dicta suggesting EHA administrative remedies need not be exhausted where damages are sought. However, the case holds no claim for damages is available under the EHA. *Fialkowski* holds administrative remedies need not be exhausted in a section 1983 action. Neither case is apposite.

[17] Equally important, the procedure allows the department to explain to plaintiff its reasons, if any, for spending EHA funds in the manner it has.

[18] Without intending to disparage the integrity of the superintendent we note that a continued unlawful use of funds, if brought to the attention of the federal Department of Education, could result in the withholding of federal funds. (See 34 C.F.R. §§ 76.900-78.86.)

review officer excused where plaintiffs had obtained two prior hearings by state review officers]; *Christopher T. v. San Fran. Unified Sch. Dist. of Pima County* (N.D.Cal. 1982) 553 F.Supp. 1107, 1117 [plaintiff obtained favorable decision from state review officer yet obtained no relief].)

We conclude plaintiff's admitted failure to exhaust his section 3080 administrative remedy is not excused by the doctrine of futility. Plaintiff's pursuit of his third count in the courts is therefore premature. (*Sea & Sage Audubon Society, Inc. v. Planning Com., supra,* 34 Cal.3d at p. 419.)

The trial court properly sustained defendants' demurrer to the third count without leave to amend.

## IV

### *Fourth Count*

### *Plaintiff's Fourth Count Is Barred for Failure to Comply With the Tort Claims Act*

Plaintiff's fourth count seeks damages for breach of the previously discussed annual plans between defendants and the federal government. It is clear plaintiff's contract cause may not proceed because plaintiff has failed to allege he complied with the Tort Claims Act (Gov. Code, § 905.2) by filing a claim with the State Board of Control.

Government Code section 905.2 provides in pertinent part that "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against the state: . . . [¶] (c) For money or damages (1) on express contract, . . ." The section applies to actions for damages for breach of contract. (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576].) Moreover, the claim requirement is not excused merely because a claim is brought as a class action. (*Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 696-699 [108 Cal.Rptr. 392].) Plaintiff's claim for monetary recovery in the form of contract damages is therefore barred. (*Loehr v. Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1080.)

The trial court properly sustained defendant's demurrer to the fourth count without leave to amend.

## V

### *Plaintiff's Fifth and Sixth Counts Have Been Brought Prematurely*

Plaintiff's fifth and sixth counts allege breach of fiduciary duty and seek imposition of a constructive trust on EHA funds and an accounting.

These claims are premised on the asserted right of plaintiff and his class to receive EHA funds or to have them allocated for their benefit. (Civ. Code, §§ 2223, 2224; see *Martin* v. *Kehl* (1983) 145 Cal.App.3d 228, 237 [193 Cal.Rptr. 312].)

However, as we have explained, although plaintiff and his class are entitled to compensatory educational services to remedy past wrongs, they are not entitled to any portion of EHA funds already spent.[19] Nor are they entitled to have current EHA funds allocated for their benefit until they have exhausted the section 3080 administrative procedure. Consequently, in the absence of exhaustion of the section 3080 procedure, plaintiff and his class have no lawful claim to a constructive trust or an accounting of EHA funds.

The trial court did not err in sustaining defendants' demurrer to the fifth and sixth counts without leave to amend.

Although defendants' general demurrer was properly sustained as to the third through sixth counts, the demurrer was erroneously sustained as to the first and second counts and the judgment of dismissal must therefore be reversed.

### DISPOSITION

The judgment is reversed. Appellant is awarded his costs on appeal.

Evans, Acting P. J., and Blease, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 7, 1988.

---

[19]Our remarks should not be construed as a limitation on plaintiff's right to obtain discovery of the allocation of EHA funds relevant to his claims.